24 C.C.P.A.(Patents)

**BARTON MFG. CO. v. HERCULES POWDER CO.**

**Patent Appeal No. 3760.**

Court of Customs and Patent Appeals. March 22, 1937.

Edward S. Rogers, William T. Woodson, and James H. Rogers, all of Chicago, Ill. (Browne & Phelps, of Washington, D. C., of counsel), for appellant.

George J. Harding, of Philadelphia, Pa., for appellee.

Before GRAHAM, Presiding Judge, and BLAND, GARRETT, and LENROOT, Associate Judges.

GRAHAM, Presiding Judge.

Paper Makers Chemical Corporation, a corporation duly organized under the laws of the State of Delaware, filed its application in the United States Patent Office for registration of a trade-mark consisting of the word "Dishine," superimposed upon a representation of a stack of dishes, used as a trade-mark in connection with the sale of "a cleaning compound for dishes, crockery, glassware, cooking utensils, and the like." Barton Manufacturing Company, the appellant, filed a notice of opposition to said registration, relying largely upon a registration of its trade-mark "Dyanshine," which mark was registered on June 1, 1920, for a mark used in connection with the sale of a "polish for leather goods, such as shoes, suitcases, etc."

On November 2, 1936, Paper Makers Chemical Corporation assigned its right, title, and interest, in and to the said trade-

mark "Dishine," together with the good will of its business, to the appellee, Hercules Powder Company, and the necessary substitution of parties was made, by leave of this court, on December 8, 1936.

The applicant, as shown by the evidence, was engaged in the manufacture of a line of heavy chemicals consumed by the paper industry, and on or about September 30, 1931, began to sell a product described under the name of "Dishine." This material was "a modified soda consisting of mainly tri-sodium phosphate, with small additions of soda ash, soap." This was manufactured and sold for washing dishes, including glassware and bottles, such as beverage bottles. Its main use, as shown by the testimony, is in washing dishes, and it was put on the market to be used in automatic dish washing machines. As so used, it is dissolved in water and added to the dishes in a dish washing machine or receptacle. It is shown to be a cleaner and water softener, and is entirely soluble in water. The maker sells it principally to jobbers who, in turn, sell to institutional supply houses, hotels, and restaurants; the bulk of sales being to the jobbers.

As sold, it is put up in wooden barrels, holding approximately 325 pounds, net weight, but some is packed in half barrels, 150-pound steel drums, 40-pound kegs, and 25-pound galvanized pails. The pails are the smallest packages which have been produced up to this time. Upon these various packages two kinds of labels are used. One of these labels consists of an orange-colored strip upon which appears, in large black letters, the word "Dishine" in connection with "Paper Makers Chemical Corp. Kalamazoo, Mich.," and a seal-like mark, consisting of a white circle with a dark center and the words "Superior P M C Chemicals." Another style of label is a circular stencil bearing the words "Paper Makers Chemical Corp. Dishine 347-22-325 Milwaukee, Wis.," with a seal bearing the words, "Superior P M C Chemicals."

The evidence shows that the mark shown in connection with the application for registration is not commercially used, the illustration of the stack of dishes being omitted in the mark used in the trade. The applicant also publishes a pamphlet which is circulated, and a copy of which is in evidence as Applicant's Exhibit 1, in which appear statements as to the use of its product, among the statements made on said exhibit being the following: "Dishine for cleaning and deodorizing glassware, dishes, silverware, cooking utensils." "Purpose: Manufactured especially for cleaning, deodorizing, and polishing dishes, silverware, and utensils. A splendid silverware polish—safe and convenient." And, "3. Detarnishes silverware instantly."

On the part of the opposer, it is shown that in 1917 Warren D. Barton invented a preparation for the cleaning and polishing of leathers, which he named "Dyanshine." There was a great demand during the period of the World War for a cleaner and polisher of leather equipment used by the army, and Barton was called upon to sell, for use of the troops at Camp McArthur, at Waco, Tex., a very large amount of his polish, and during the period of the war the sales of this product became very large, especially for military purposes. From that time until the present, the product has been extensively sold, the sales extending into every State of the Union, as well as into many foreign countries. Approximately 40,000,000 bottles of the product had been sold at the time of the taking of the testimony herein, which amounted to a sale in excess of $15,000,000. The trade-mark has been and is applied to various kinds of shoe polish, the colors being black, nut brown, cordovan, oxblood, neutral, light tan, black suede cleaner, white canvas cleaner, white kid cleaner, and to another product called boot oil. Extensive advertising has been carried on in 12 or 15 magazines, and in approximately 3,500 newspapers, the cost of such advertising being in excess of $1,250,000. The mark "Dyanshine" was registered in the United States Patent Office on June 1, 1920. The use of the name has been continued until the present time. The record also shows that quite frequently letters are received by Barton Manufacturing Company in which the company is named as "Dishine," and "Dieshine" and "Dyeshine."

The Examiner of Interferences was of opinion that the opposition should be dismissed and that registration should be allowed, stating, in part: "Considering the differences in the marks and the characteristics of the goods the examiner is clearly persuaded that they can be honestly used in trade and it must be here presumed that they are so used."

Appeal was taken to the Commissioner of Patents. The first assistant commissioner considered the matter and was not in harmony with the views expressed by the Examiner of Interferences as to the similarity of the marks, holding, in part, "I am compelled to the view announced in the beginning that the marks are confusingly similar."

The assistant commissioner, however, was of the opinion that the goods were not of the same descriptive properties, and therefore affirmed the decision of the Examiner of Interferences dismissing the notice of opposition. From that decision the appellant has prayed an appeal to this court.

We agree with the opinion of the assistant commissioner that the trademarks here involved are of such a character as to be likely to cause confusion in the mind of the public as to the origin of the goods involved in this proceeding. The words "Dyanshine" and "Dishine" are so nearly alike in appearance and sound as to be confusingly similar. It is contended by the appellant that its mark "Dishine" should be pronounced as if it were spelled "Dish-shine" and that this is explained by the reference to its use mainly as an aid in the washing of dishes. It is testified by Mr. Lawrence, of the applicant company, that the name is always pronounced as if spelled with the first i short and the second i long. This, however, is not conclusive as to the impression that the name would create upon the mind of the ordinary purchaser of the product. It might well be pronounced giving the first i a long sound and the last i a long sound. The words look alike, they are spelled very nearly alike, begin with the same letter, and end with the same combination of letters, namely, "shine."

As has been many times said by the courts, the applicant had an unlimited field to pick from, and it would seem quite apparent that it might have picked a name for its product which did not have the same close similarity to the registered mark of the opposer as does the one here sought to be registered. In this respect, the names are not more dissimilar than were those in the case of Rose Nerenstone Bookman, Doing Business as Peroxogen Co. of America, v. Oakland Chemical Co., 40 F.(2d) 1006, 17 C.C.P.A. (Patents) 1213, where the names "Per-

oxogen" and "Dioxogen" were held to be confusingly similar, or the marks "Ammo-Phos-Ko" and "Nitrophoska" which were held to be confusingly similar in American Cyanamid Co. v. Synthetic Nitrogen Products Corporation, 58 F.(2d) 834, 19 C.C.P.A. (Patents) 1235; or the words "Solvit-All" and "Solvite" in C. E. Langfield v. Solvit-All Corporation, 49 F.(2d) 480, 481, 18 C.C.P.A. (Patents) 1313; or the words "Oxydol" and "Oxol," held to be confusingly similar in Procter & Gamble Co. v. J. L. Prescott Co., 49 F.(2d) 959, 18 C.C.P.A. (Patents) 1433.

Judge Hatfield, speaking for this court in Celanese Corporation of America v. Vanity Fair Silk Mills, 47 F.(2d) 373, 375, 18 C.C.P.A. (Patents) 958, relative to the similarity of the marks "Celanese" and "Silkenese," said: "Nevertheless, appellee selected a trade-mark closely simulating the trade-mark of appellant. It is true that the marks are not identical and that they differ to some extent both in sound and in appearance. However, the public should not be required to analyze trademarks with scrupulous care, nor should it be compelled to resort to a study of etymology in order to avoid confusion and mistake."

The same rule was applied in Celotex Co. v. Bronston Bros. & Co., Inc., 49 F.(2d) 1048, 18 C.C.P.A. (Patents) 1490, where the trade-marks "Celotex" and "Flametex" were in opposition.

An interesting authority in this connection is American Products Co. v. F. A. Leonard, 53 F.(2d) 894, 19 C.C.P.A. (Patents) 742, where, in discussing the similarity of the words "Zeno" and "Zanol," we said:

"The sole and only question, therefore, is: Are the marks confusingly similar?

"We are unable to escape the conviction that they are. The words may be pronounced in almost the same way. If the e in 'Zeno' is given the sound of e as in 'prey,' and the a in "Zanol" is given the sound as in 'brake,' but little difference will be ordinarily distinguished. As was well said by the witness Clarence M. Mills: 'There is no such thing as a correct pronunciation for a trade-mark. It is pronounced in different ways by different people.'"

We do not find ourselves in agreement with the conclusion of the assistant commissioner as to the goods not being of the

same descriptive properties. The conclusion of the assistant commissioner seems to be directly in conflict with the most recent trend of authority, not only in this but in other federal courts.

Two cases have been called to our attention by the assistant commissioner's decision which appear to us to be plainly in conflict with his conclusion herein. In the first of these, C. E. Langfield v. Solvit-All Corporation, supra, the word "Solvit-All" was used as a trade-mark in connection with the sale of sanitary solvents for cleaning, disinfecting, and deodorizing toilet bowls and similar articles. This mark was in conflict with the trade-mark "Solvite," used on a cleaning preparation, which, when mixed with gasoline, was used in cleaning garments, draperies, fabrics, rugs, carpets, automobile seats, and other articles from which it was desired to remove greasy and other substances. We said, in part:

"It is true that the goods of the parties do not possess, entirely, the same essential characteristics. Nevertheless the purposes for which they are used are of the same general nature, and are closely associated and related. They are both used for cleaning purposes by the general public, are sold in the same stores, and, although a purchaser would not confuse the two products, confusion as to their origin would probably result should the parties use their trade-marks concurrently.

"We are of opinion, therefore, that the goods are of the same general class and possess the same descriptive properties within the principles heretofore announced by this court."

The other case cited is that of Procter & Gamble Co. v. J. L. Prescott Co., supra. In that case "Oxydol" was used as a trade-mark on soap powder, and "Oxol" as a trade-mark on a liquid chlorine solution, intended for use as a disinfectant, germicide, deodorant, sterilizer, cleaner, and bleacher. We held the goods to be of the same descriptive character.

In the Rose Nerenstone Bookman, etc., v. Oakland Chemical Co. Case, supra, hydrogen peroxide bleaching compounds, and bleaching powders were held to be goods of the same descriptive properties as antiseptic and disinfectant compounds.

It is argued by the appellee that the goods are sold in different sized packages, the smallest package of Dishine being a pail weighing 25 pounds, and that, therefore, because of this difference in the merchandising of the product, the goods are not likely to be confused in the mind of the purchaser. It may be true that the purchaser would not be apt to confuse a small bottle of polishing material with a 25-pound pail of the appellee's product, yet it must be borne in mind that the appellee may sell his product in such sized packages as it may choose, and, therefore, may simulate in style of package the goods of the appellant. Again it is stated that the mark, as sought to be registered, contains a representation of a stack of dishes which would distinguish the marks and the goods. However, in our opinion, this would not sufficiently distinguish the marks.

Without an unnecessary citation of authorities, we are of opinion that the goods of the respective parties in this proceeding are of the same descriptive properties, belonging to the same general class, and that confusion is apt to result if the mark of the appellee be given registration. This conclusion, we think, is in harmony with the recent authorities.

The decision of the Commissioner of Patents is reversed.

Reversed.

HATFIELD, Associate Judge, took no part in the decision of this case.