**GENERAL ANILINE & FILM CORPORATION, Appellant,**

v.

**HUKILL CHEMICAL CORPORATION, Appellee.**

Patent Appeal No. 6634.

United States Court of Customs and Patent Appeals.

March 15, 1961.

Walter G. Hensel and Samson B. Leavitt, New York City, for appellant.

Alfred C. Body, Cleveland, Ohio, for appellee.

Before WORLEY, Chief Judge, RICH, MARTIN and SMITH, Judges, and Judge WILLIAM H. KIRKPATRICK.[*]

SMITH, Judge.

Appellant as opposer, a manufacturer of organic chemicals, secured the trademark Uvinul[1] from the registrant, General Dyestuff Corporation, which mark was registered prior to the alleged adoption in May 1957 of the mark Huvilon[2] by appellee-applicant. The mark Uvinul has been used by opposer for ultraviolet light absorbers, the sales volume being in excess of $100,000 per year as of August 1958.

Opposer's record shows that since 1954 when it acquired the trademark Uvinul, it has used the mark on ultra-violet light-absorbing hydroxybenzophenones which are sold for incorporation in polyester resins and plastics. This product may be incorporated into polyester resins, which may include polyurethane foams. Thus, the products of the parties are not substitutes for each other, and are, to that extent, non-competitive. The record also shows that the sale of the products of the parties is directed to at least some of the same classes of purchasers.

The opposition was dismissed by the Trademark Trial and Appeal Board, 122 USPQ 404, for the reason that considering the nature of the products the common purchasers of such products would be likely to be able easily to distinguish

[*] United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate *in place of Judge O'Connell,* pursuant to provisions of Section 294(d), Title 28 United States Code.

1. Reg. No. 578,634, August 11, 1953, for "chemical compounds and compositions for absorbing ultra-violet light, for use as Light Filters."

2. Ser. No. 30340 filed May 20, 1957 for "Prepolymer for Polyurethane Foam."

between the marks, the products, and their sources, and for the further reason that the differences in the marks, when coupled with the differences in the products, are such that purchasers, who probably are informed and wary, are not likely to be confused or deceived as between Huvilon polyurethane foam prepolymer and Uvinul ultra-violet light absorbers.

Testimony offered on behalf of the opposer established that Uvinul ultraviolet light absorbers were recommended in opposer's advertising activities for incorporation in polyester resins of which polyurethanes are one category and were recommended to customers and prospective customers specifically for incorporation in polyurethane resin foams.

The record also establishes that Uvinul ultraviolet light absorbers and Huvilon polyurethane foam prepolymers would reach the same customers and be used in the same final product.

Substantial amounts were expended by the opposer in advertising ultraviolet light absorbers under the trademark Uvinul from 1953 onward.

While no evidence of actual confusion was presented, the witness Weth, a sales development engineer of the opposer, testified that use of the mark Huvilon on polyurethane prepolymers in which opposer's Uvinul ultraviolet light absorbers are also employed, would cause difficulty because of the similarity of the marks employed on products reaching the same customers for use in the same final product. The witness Buchner, opposer's assistant advertising manager, testified that in his opinion opposer would be damaged by the use of the mark Huvilon in advertising applicant's goods. This was for the reason that due to similarity of the names "the purchasers of these products would tend to be confused."

The sole issue in this appeal is whether applicant's mark so resembles that of opposer as to be likely, when applied to the merchandise specified in the application, to cause confusion or mistake or to deceive purchasers, such that registra-

tion of applicant's mark is prohibited under Section 2(d) of the Trademark Act of 1946, 15 U.S.C.A. § 1052(d).

At the outset we are confronted with coined word marks which per se have no recognized meaning. Such meaning as may be ascribed to the mark Uvinul appears to have been built up and acquired by reason of opposer's use and advertising of the mark. The record is silent as to applicant's use of the mark Huvilon and as to any meaning which may be ascribed to it. The absence of any meaning for the mark Uvinul except as opposer's trademark is an important factor to be considered. There are no distinctive meanings which can be relied upon to resolve the issue.

Applicant's mark Huvilon, and opposer's mark Uvinul resemble each other in sound and in appearance. The fact that neither name has any meaning apart from the goods on which they are used makes it difficult for a purchaser to keep the names clear of possible confusion based on these similarities. The specific differences in the names tend to be lost in this confusion.

The marks when considered as a whole determine whether confusing similarity exists. Sleepmaster Products Co., Inc. v. American Auto-Felt Corp., 241 F.2d 738, 44 CCPA 784; Goodall-Sanford, Inc. v. Tropical Garment Manufacturing Co., 275 F.2d 736, 47 CCPA 823.

In view of the above we think there is a likelihood of a purchaser ascribing common origin to the products sold under the marks.

The decision of the Trademark Trial and Appeal Board is in part predicated upon its finding that the purchasers of the goods of the parties "probably are informed and wary."

There is no evidence other than the nature of the goods themselves from which we can determine whether purchasers of applicant's goods defined in the opposed application are discriminating purchasers and as such are "probably informed and wary." To the extent the testimony and exhibits indicate that

the customers would belong to any given class, the record suggests that opposer's mark would be used for all the goods specified in the registration in all kinds of markets and hence would be sold to all kinds of purchasers. We find no basis in the record for the assumption made by the Trademark Trial and Appeal Board that the class of common purchasers to which applicant's and opposer's products are sold under their respective marks are in any way especially informed or wary, so as to be discriminating purchasers who are able to distinguish between the marks, the products and their sources.

Although there are specific differences in the marks, the likelihood of confusion of purchasers as to the source or origin of applicant's goods, remains in doubt. We are resolving that doubt in favor of opposer as the prior registrant.

In United States Time Corporation v. Tennenbaum, 267 F.2d 327, 328, 46 CCPA 895, this court stated:

"We * * * reverse only on the well-established principle of trademark law of resolving doubt in favor of the first user who, here, as shown by the record, has over a long period spent considerable time and money in establishing and promoting its mark. The newcomer is free to choose another mark, but not one which comes so close to appellant's mark."

For the foregoing reasons we *reverse* the decision of the Trademark Trial and Appeal Board.

Reversed.

RICH, Judge (dissenting).

In expression of my subjective opinion as to likelihood of confusion, etc., my vote is to affirm the unanimous three man board.

The evidence as to what the goods are persuades me that the marks in issue are for items sold to industry. Those whose ears are attuned to the nomenclature of the trade will not, in my opinion, confuse either the goods or the marks and I see nothing to suggest common origin.

I consider the opinion evidence of opposer's employees to be weightless.