49 CCPA

**WINCHARGER CORPORATION,**
Appellant,

v.

**WIANCKO ENGINEERING COMPANY,**
Appellee.

**Patent Appeal No. 6754.**

United States Court of Customs
and Patent Appeals.

May 4, 1962.

Rehearing Denied July 11, 1962.

———◆———

Hugh H. Drake, Chicago, Ill. (Homer R. Montague, Washington, D. C., of counsel), for appellant.

Liddy, Sullivan, Hart, Daniels & Stemple, Francis J. Sullivan, New York City (Joe E. Daniels, New York City, of counsel), for appellee.

Before WORLEY, Chief Judge, and RICH, MARTIN, and SMITH, Judges, and Judge WILLIAM H. KIRKPATRICK.[*]

WORLEY, Chief Judge.

Appellee seeks registration, through two applications, of the mark "WIANCKO" on a twisted tube design for certain goods including electrical equipment.[1] In both cases appellant opposed registration on its prior use and registrations of "WINCO" for electrical equipment.[2] The Trademark Trial and Appeal

---

[*] United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate in place of Judge O'CONNELL, pursuant to provisions of Section 294(d), Title 28 United States Code.

[1.] In application Serial No. 24,890, involved in Opposition No. 38,517, registration of the mark is sought for oscillator units, automatic frequency standardizing units, electronic range and balance control units, electrical filter units attenuator units, amplifiers, demodulator units, combined amplifier and demodulator units, instrument cabinets and tables, especially adapted for use in data measuring systems; electronic commutators and electro-mechanical commutators especially adapted for use in telemetering systems; force gauges, pressure sensing devices, accelerometers and pressure calibration units; digital computers, analog computers, counter registers and other data measuring systems; frequency multiplier units; peak voltage indicators, bridge circuit units; and oscillograph patch panels, in class 26.

In application Serial No. 24,889, involved in Opposition No. 38,526, registration is sought for power supplies, in class 21.

[2.] The registrations relied on by appellant are:

(1) No. 397,887, issued September 29, 1942, for electrical dynamotors, generators, converters and motors;

(2) No. 541,377, issued April 24, 1951, for wind-driven power apparatus and parts thereof, particularly wind-driven electric current generator apparatus and parts thereof;

(3) No. 586,217, issued March 2, 1954, for engine-driven power apparatus and parts thereof, particularly engine-driven

Board dismissed both oppositions, 126 USPQ 211, holding that the differences between the marks are "sufficient to obviate any likelihood of confusion, mistake or deception of purchasers."

The sole issue here, as below, is whether appellee's mark so resembles appellant's mark "WINCO" as to be likely, when applied to appellee's goods to cause confusion or mistake or deceive purchasers within the meaning of Section 2(d) of the Lanham Act (Trade-Mark Act of 1946), 15 U.S.C.A. § 1052(d).

Evidence on behalf of appellant shows continuous use of the mark "WINCO" on various items including electrical power supply equipment since 1941. It shows sales in excess of thirty million dollars from 1951 through 1958, and advertising expenditures of over five hundred thousand dollars on "WINCO" products since 1951.

Appellee, Wiancko Engineering Company, and its predecessors, have been marketing products falling within the designation of goods in their applications for registration since 1947. The products were identified by the mark "WIANCKO" alone until 1953, but since then by "WIANCKO" in association with a twisted tube design. Sales of the products have been substantial and supported by appreciable advertising.

The record shows "WINCO" was derived from appellant's corporate name, Wincharger Corporation, and "WIANCKO" is the surname of appellee's predecessor, who is now its president. The board found certain distinctions between various products of the parties, but also found that appellee's broad designation of goods as power supplies "comprehends static and transistorized power equipment of the character sold by opposer."

Appellant argues here that the board committed reversible error in dismissing the opposition, specifically pointing out the similarities in sound and spelling of the competing marks. While we appreciate those similarities, we are of the opinion they are sufficiently outweighed by the dissimilarities as to allow registration of the mark applied for.

Finding no error in the decision of the board, we affirm the decision.

Affirmed.

KIRKPATRICK, Judge (dissenting).

I am unable to agree with the majority in its conclusion that the marks are not confusingly similar. The Board found that " 'Winco' and 'Wiancko' are substantially different in appearance, and while they contain some similarity in sound, they are readily distinguishable in that respect."—a finding adopted by the majority of this court though not in exactly the same terms. Judging by eye and ear, which is necessarily the basic consideration in trademark cases of this kind, I am unable to reach any conclusion other than that the marks are *not* substantially different in appearance and are *not* readily distinguishable in sound. In fact, it seems to me that anyone would be hard put to it to devise a word any closer to the opposer's mark than the applicant's, without making a letter for letter copy. The difference between "co" and "cko" is practically nil, and the whole case for the applicant hangs upon the insertion of an intermediate "a" which in pronouncing the word may be, and probably frequently is, slurred over.[1]

The goods of the parties are closely related products. The Board found that the goods of both "may be classified as electronic and electrical equipment and

electric current generator apparatus and parts thereof; and

(4) No. 671,116, issued December 16, 1958, for dynamo-electric machines, particularly motors, generators, dynamotors, inverters, and converters; prime-mover-driven electric generators, particularly engine-generator combinations and starter-control units therefor; prime-mover controls including engine idling-control

units; electric power supplies; wind-electric equipment, particularly wind-driven generator apparatus and components thereof, and parts of any of the foregoing.

1. "There is no such thing as a correct pronounciation for a trade-mark. It is pronounced in different ways by different people." Barton Mfg. Co. v. Hercules Powder Co., 88 F.2d 708, 710, 24 CCPA 982.

are to some extent sold to the same classes of purchasers or advertised in the same publications"—a finding not questioned by the majority. Both the Board and the majority agree that the applicant's broad designation of the goods as power supplies "comprehends static and transistorized power equipment of the character sold by opposer." In other words, regardless of the precise types of equipment now being sold, if registration is allowed, the trademarks may be used in connection with identical goods.

We are not here concerned with the law of unfair competition nor with the right of the applicant to the use of its corporate name, nor with its good faith in adopting it as a trademark. The issue is confusing similarity of the marks and nothing else. It is true that precedents are not very helpful in determining that issue. Even so, I do not see how the court can be applying consistent standards as to likelihood of confusion when it decides that "Dyanshine" and "Dishine" (Barton Mfg. Co. v. Hercules Powder Co., supra) are confusingly similar and also that "Winco" and "Wiancko" are not.

This court, in a recent case in which it was held that "Huvilon" so resembled "Uvinul" as to be confusingly similar, pointed out that "The fact that neither name has any meaning apart from the goods on which they are used makes it difficult for a purchaser to keep the names clear of possible confusion based on * * similarities." General Aniline & Film Corp. v. Hukill Chemical Corp., Cust. & Pat.App., 287 F.2d 926, 927. In the present case we have two perfectly meaningless words, both of them unusual and neither remotely suggestive of any English word. In the case of ordinary well known English words, most literate people know how the word should be spelled and, therefore, quickly notice a very slight variance. Not so with words like those before us or like "Huvilon" and "Uvinul". It seems to me that the soundness of the court's observation in the "Huvilon" case quoted above is demonstrated by the fact that in a period of seven months the let-

ters received by the applicant showed over 100 different variations or misspellings of its name although the writers had the correct address and thus appeared to be acquainted with the applicant.

I would reverse the decision of the Board.