438 F.2d 1005
 GEIGY CHEMICAL CORPORATION, a New York Corporation, Substituted for Geigy Chemical Corporation, a Delaware Corporation, Appellant,
v.
ATLAS CHEMICAL INDUSTRIES, INC., Appellee.
 Patent Appeal No. 8441.
 United States Court of Customs and Patent Appeals.
 March 11, 1971.
 
 Leo C. Krazinski, Suffern, N. Y., attorney of record, for appellant. Frederick H. Rabin, Ardsley, N. Y., of counsel.
 Charles M. Allen, Philadelphia, Pa., for appellee. Roger R. Horton, Wilmington, Del., of counsel.
 Before RICH, ALMOND, BALDWIN and LANE, Judges, and FORD, Judge, United States Customs Court, sitting by designation.
 RICH, Judge.
 
 
 1
 This appeal is from the decision of the Patent Office Trademark Trial and Appeal Board (abstract 158 USPQ 681) dismissing the opposition by appellant to the registration of the trademark HYDRONOL for "diuretic," application serial No. 214,501, filed March 19, 1965, claiming first use June 10, 1964. We reverse.
 
 
 2
 The application is to register HYDRONOL on the Principal Register, filed by Atlas Chemical Industries, Inc., a Delaware corporation, and the specimen filed therewith shows that HYDRONOL, at the time of filing was a "new drug" marketed for investigational use only by a division of appellee known as The Stuart Company, Pasadena, California.
 
 
 3
 Opposer, Geigy Chemical Corporation, now, by merger with Ciba Corporation, Ciba-Geigy Corporation, relies on its prior registration No. 437,263, issued March 9, 1948, under the Act of February 20, 1905, for the trademark HYGROTON for "Diuretic remedy for the treatment of oedema of cardiac origin in powder, liquid and tablet form." The registration recites continuous use since April 25, 1947. For legal purposes, the goods are obviously identical. The only question is whether the marks so resemble each other as to be likely to cause confusion, or to cause mistake or to deceive. (15 U.S.C. § 1052(d)).
 
 
 4
 Neither party took testimony. The case was presented below on a stipulation of facts dated April 4, 1967, covering the period from 1960 through 1966 with respect to appellant's sales and the preceding year as to preparation for sales. The salient facts may be summarized as follows. HYGROTON was adopted by appellant for use on a diuretic having the generic name chlorthalidone in January 1959.[1] First investigational use thereof commenced March 23, 1959, and an FDA New Drug Application was conditionally approved on March 18, 1960. The first commercial shipment was in April 1960. HYGROTON has been continuously used since March 23, 1959. Total sales through 1966 in dollars have been $20,772,384 and in tablets 407,547,100. Advertising inserts in the same period were 1240 and expenditures for advertising of all kinds including samples were $3,274,132.
 
 
 5
 Priority of use and registration by opposer is not disputed.
 
 
 6
 Appellant asserts and appellee does not deny that Reg. No. 437,263 of March 8, 1948, was brought within the Trademark Act of 1946 under section 12(c) thereof (15 U.S.C. § 1062(c)) by publication in the Official Gazette of December 6, 1960, affidavits under sections 8 and 15 were filed and accepted January 19, 1966, and the registration was renewed in 1968. Originally granted to a predecessor, the ownership of the registration now resides in opposer-appellant.
 
 
 7
 The basis of the board's decision dismissing the opposition is to be found in its statement that the marks of the parties are
 
 
 8
 * * * readily distinguishable when spoken and, in our opinion, they do not closely resemble one another in appearance, irrespective of whether they are presented in handwritten form or in block type.
 
 
 9
 The board appears to have been concentrating on a side-by-side comparison. When so compared, we might come to a similar conclusion but what the statute prescribes as the test is whether the marks so resemble one another as to be likely to cause confusion or mistake, and this requires us to consider, among other things, the fallibility of memory over a period of time, not merely whether one can distinguish the marks at a given moment.
 
 
 10
 Given even a moderate interval of time, and even though these are prescription drugs, we do not feel that physicians who prescribe these two diuretics would be immune from confusion either as to the products or their source. The prefixes HYDRO- and HYGRO-sound very much alike and convey almost the same meaning. There is also an obvious similarity in the last four letters of the marks, -ONOL and -OTON, namely, the same number and the same placement of the two "O's" and the same number of letters, not only in those suffixes but also in the marks as a whole. This may be dissection, but its purpose is only to point out the similarities in the marks as a whole.
 
 
 11
 We think that a doctor who, perhaps, had recently been introduced to HYGROTON or HYDRONOL as a diuretic, not prescribing diuretics to his diverse patients every day, on encountering the other product a week or two later or searching his memory or the index of the "Physicians' Desk Reference" (PDR) and finding both trademarks there might not be sure which was which, particularly since both are diuretics and therefore have the same physiological function, generally speaking. The question is not whether a physician is careful, as he normally is, but how long he remembers clearly when confronted with confusing similarity. We feel there is a reasonable likelihood that, by reason of the similarity of the marks, he would be confused.[2] Since reliance may be placed on fallible memory of the sound or appearance of a trademark, as distinguished from a generic name, we feel there should be a clearer distinction than exists here.
 
 
 12
 Both sides have, of course, cited many prior decisions on other marks which, as usual, we find of little help. In the end, it is a subjective opinion. Our considered judgment that there is reasonable likelihood of confusion and mistake as to both product and source could be supported by citation of many precedents in which there were even greater differences between the marks than exist here. It goes without saying that if there were any doubt about likelihood of confusion, it must be resolved in favor of the prior user. Appellant has persuaded us that the board erred and we therefore reverse.
 
 Reversed
 
 
 Notes:
 
 
 [1]
 The record shows nothing about the use of the mark from 1947 through 1959 by appellant or its predecessors, but the 1959 use is sufficient to make appellant the prior user
 
 
 [2]
 The 1969 "PDR," in a list of 63 "Diuretics," lists four proprietary products whose brand names begin with "HYDRO-" and one beginning with "HYGRO-," viz., HYGROTON
 
 
 
 13
 BALDWIN, Judge (dissenting).
 
 
 14
 Neither appellant nor the principal opinion here has persuaded me that the Trademark Trial and Appeal Board committed reversible error in this case. I agree with the unanimous conclusion of the board that the record in this case does not justify the conclusion that the concurrent use of these two marks is likely to cause confusion, mistake or deception as to the source of the goods on which they are employed.
 
 
 15
 As in every case, this court's decision must be based solely on facts found in the record or of which we might properly take notice. As in every appeal raising this particular issue, we must evaluate the marks in their entireties in light of the circumstances surrounding their use as indicated by the facts before us. I find the analysis put forward in the majority opinion to contain an overly technical, impermissible dissection of the two marks under consideration. In addition, I find that analysis to be based, at least in part, on conjecture and surmise regarding facts which, I believe, should not properly be considered.
 
 
 16
 Regarding the marks themselves, I disagree that HYGROTON and HYDRONOL are as similar as the majority opinion would suggest. Nothing more can be said. The marks are different. More importantly, however, I cannot accept the majority's contrived analysis concerning how the marks might be used or interpreted in commerce. Physicians, the acknowledged focal point for our determination of the likelihood of confusion, may as a class be harried. Nevertheless, I am unwilling to assume that they do not compensate for this fact by being extra careful and discriminating in prescribing and dispensing medicines and drugs such as the diuretics here involved. I would more readily accept the majority's conjectures in this regard if the record were to contain evidence of even a single instance of actual confusion. Needless to say, it does not. Therefore, I would affirm.
 
 
 17
 FORD, J., concurs in the result of this dissent.