03/28/01

**THIS DISPOSITION
IS CITABLE AS PRECEDENT
OF THE TTAB**

Paper No. 14
GFR

**UNITED STATES PATENT AND TRADEMARK OFFICE**
————

**Trademark Trial and Appeal Board**
————

In re Sun Microsystems, Inc.
————

Serial No. 75/430,946
————

Sally M. Abel, Karen P. Anderson, Melissa M. Manwaring of Fenwick & West LLP for Sun Microsystems, Inc.

Jessie W. Billings, Trademark Examining Attorney, Law Office 103 (Michael Szoke, Managing Attorney).
————

Before Walters, Bottorff and Rogers, Administrative Trademark Judges.

Opinion by Rogers, Administrative Trademark Judge:

Sun Microsystems, Inc. seeks to register AGENTBEANS as a mark for goods identified as "computer software for use in the development and deployment of application programs on a global computer network."[1] Registration has been refused under Section 2(e)(1) of the Trademark Act, 15

---

[1] Serial No. 75/430,946, filed February 9, 1998, based upon an allegation of a bona fide intention to use such term in commerce. An assignment of the application from NetDynamics, Inc., applicant's wholly-owned subsidiary, is recorded in the Office's Assignment Branch at Reel 2030, Frame 899.

U.S.C. §1052(e)(1), on the basis that, when used on or in connection with applicant's goods, the mark will be merely descriptive of them.

When the Examining Attorney made the refusal final, applicant appealed. Briefs were filed, but an oral hearing was not requested. We affirm the refusal of registration.

The Office bears the burden of setting forth a prima facie case in support of a descriptiveness refusal. See In re Gyulay, 820 F.2d 1216, 3 USPQ2d 1009 (Fed. Cir. 1987) (When the Examining Attorney sets forth a prima facie case, the applicant cannot simply criticize the absence of additional evidence supporting the refusal and must come forward with evidence supporting its argument for registration.). To meet the Office's burden, the Examining Attorney has made of record a definition of "agent" from a specialized computer dictionary; numerous excerpts retrieved from the NEXIS computerized database of periodicals, each of which includes "Bean" or "bean," or plural forms thereof, and the word "component"; and copies of web pages retrieved from java.sun.com and netdynamics.com. It is the Examining Attorney's position that AGENTBEANS is descriptive because "beans" describes the nature of the goods, i.e., that they are software development programs, and "agent" describes a particular

characteristic of the goods, i.e., that they are "agent" type programs.

Applicant argues that AGENTBEANS is a coined mark; that two or more descriptive terms, when combined, can be suggestive or fanciful and therefore registrable as a mark; that AGENTBEANS is not found in any dictionary; that the Examining Attorney did not find any evidence of use of the term by entities other than applicant; and that the Office has determined that "BEANS-suffixed" marks are registrable, "even where the prefix is a descriptive or generic term," as evidenced by other registrations that have issued for software and which include "beans" in the mark. Further, applicant has noted that its application for registration of the mark JAVABEANS "was allowed without even an office action as to descriptiveness."[2] Notwithstanding its argument regarding the issuance of the JAVABEANS registration, applicant does, however, expressly concede that "the term 'beans' is a descriptive term for application development software."

---

[2] Eventually, JAVABEANS was registered for "Computer programs for use in developing and executing other computer programs on computers, computer networks, and global communications networks; computer programs for use in viewing other computer programs on computers, computer networks and global communications networks." Registration No. 2,304,483, issued December 28, 1999, and claims dates of first use and first use in commerce of April 20, 1998.

We briefly discuss the subject of software "beans" to provide some context for our consideration of AGENTBEANS.

The record and various computer dictionaries we have referenced[3] reveal that "beans" are building blocks used to create software in the Java computer programming language, a language that was developed by applicant. See, for example, Dictionary of Computer and Internet Terms 47 and 253 (7th ed. 2000):

> **BDK** (Bean Development Kit) a tool for developing JavaBeans; **bean** see JAVABEAN (both pg. 47).
>
> **JavaBean** a software component written in Java. The goal of JavaBeans is to facilitate software development by letting programmers assemble programs from previously written and tested components that will work on many different platforms. This only works when there are consistent specifications for the ways for the components to work with other components. A JavaBean consists of data and methods, similar to an ordinary Java class. The data can only be accessed through accessor methods, whose names begin with *get* (to receive values from the bean) or *set* (to send values to the bean). This standardization allows an application builder tool to examine the bean and determine its properties, and how those properties can be changed.
> A JavaBean may have a visual representation (for example, it may appear as a button or a dialog box, allowing users with a visual development system to drop it onto the screen at the desired location). Beans are typically included in a JAR (Java Archive) file, which may

---

[3] The Board may take judicial notice of dictionary definitions. B.V.D. Licensing Corp. v. Body Action Design Inc., 846 F.2d 727, 6 USPQ2d 1719 (Fed. Cir. 1988).

also include other elements such as a graphical image that the bean uses.  (pg. 253).

See also, the following excerpts from NEXIS references made of record by the Examining Attorney:

If you're interested in doing JavaBean development, Lotus includes its own Lotus BeanMachine, a tool to tie Bean components together into an applet.  *PC Magazine* (May 5, 1998).

This sudden popularity in Beans has given rise to a host of tools for both developers and Web page designers.  Java development tools let programmers write new Beans and consume (import) existing Beans to develop large-scale applications.  The tools include basic Bean components for adding buttons, text, and fields as well as more advanced Beans for connecting to enterprise databases.
   The beauty of the JavaBean specification is that it lets you plug in any Beans to whatever Bean-compliant tool you use.  More important, it allows nonprogrammers to write Java applets without coding, simply by assembling Beans using a visual builder.  *PC Magazine* (April 7, 1998).

Along with OpenJ, Corel is delivering more than 80 Java-Beans components and will be including third-party JavaBeans and applications on a revenue-sharing basis….  *Computer Reseller News* (April 6, 1998).

Java Studio's interface is clean and simple to use. …Java studio comes with a set of 44 Bean components, plus another set of 23 third-party components you must install yourself.  Placing, sizing and aligning controls is a simple exercise….  Components can be easily customized [and] the Customizer window can adapt to present the available options for each Bean.
*InternetWeek* (March 23, 1998).

**Ser. No.** 75/430,946

From the record, it is clear that each software building block or "bean" has particular properties. It is also clear that the utility of these software components stems from the standardization of "beans" and the ease with which software authors can determine the properties of an individual "bean." Moreover, it appears that "beans" may be given names that reveal their properties. In this regard, we rely on the material cited above and the web page evidence made of record by the Examining Attorney. For example, the java.sun.com web pages discuss "entity beans" and "session beans" by comparing their functions and attributes: "Entity beans… represent an underlying business entity and related processes," while "session beans" are "transient" and "represent stateful dialogs between a business server and its clients." Similarly, the netdynamics.com web pages discuss the functions and attributes of "BusinessBeans" and "AgentBeans": "BusinessBeans can represent business entities such as 'customer' or 'invoice'" and "AgentBeans encapsulate and manage interactions between BusinessBeans such as business processes, relationships and external events."[4]

---

[4] There is no claim on the java.sun.com web pages that "entity beans" and "session beans" are trademarks, and those terms are set forth in lower case letters in a descriptive fashion. In contrast, on the netdynamics.com web pages, there is a claim that "BusinessBeans" and "AgentBeans" are trademarks.

The question we face, then, is whether "agent" when coupled with the concededly descriptive term "beans" creates a trademark or merely describes a "bean" with particular, readily understood attributes. As noted earlier, the Examining Attorney introduced a computer dictionary definition of the term "agent," which states: "A software routine that waits in the background and performs an action when a specified event occurs. For example, agents could transmit a summary file on the first day of the month or monitor incoming data and alert the user when a certain transaction has arrived."[5]

In its response to the first Office action, applicant specifically stated that it disagreed with the Examining Attorney's conclusion that AGENTBEANS is descriptive, but did not contest the applicability of the definition of the term "agent." Similarly, both applicant's request for reconsideration of the Examining Attorney's final refusal and applicant's appeal brief do not argue that the definition of "agent" does not describe a function or attribute of applicant's software "beans."[6]

---

[5] *The Computer Glossary* 8 (7th ed. 1995).

[6] Applicant did explain, in response to the first Office action, that AGENTBEANS are "an intelligence layer" built on applicant's Enterprise JavaBeans (EJB), and help "developers create and manage EJB entities from heterogeneous data sources and

7

It is, of course, well settled that the question whether a term is merely descriptive is determined not in the abstract, but in relation to the goods for which registration is sought, the context in which it is being used on or in connection with those goods and the possible significance that the term would have to the average purchaser or user of the goods. *See* In re Bright-Crest, Ltd., 204 USPQ 591, 593 (TTAB 1979) and In re Recovery, 196 USPQ 830 (TTAB 1977).

A proposed mark is considered merely descriptive of goods, within the meaning of Section 2(e)(1) of the Trademark Act, if it immediately describes an ingredient, quality, characteristic or feature thereof, or if it directly conveys information regarding the nature, function, purpose or use of the goods. In re Abcor Development Corp., 588 F.2d 811, 200 USPQ 215, 217-218 (CCPA 1978); *see also* In re Gyulay, *supra*. It is not necessary that a term describe all of the properties or functions of the goods in order for it to be merely

---

applications logic, enabling the creation, deployment and management of complex enterprise Java® applications." The netdynamics.com web pages, however, utilize virtually the same description for BusinessBeans, not AgentBeans. The latter are described as "a business logic subset of BusinessBeans." We find nothing in the web page description of AgentBeans that runs counter to the definition of "agent" programs, and applicant has not argued that the definition does not describe its goods.

descriptive thereof; rather, it is sufficient if the term describes a significant attribute or idea about them.  In re Venture Lending Associates, 226 USPQ 285 (TTAB 1985).

Applicant is correct in its observation that terms which, when considered individually are descriptive of a product or service may, nonetheless, be combined to create a trademark.  We disagree, however, with applicant's conclusion that AGENTBEANS is suggestive or fanciful and find that the terms "agent" and "beans" when combined are no less descriptive than the terms are individually, considered in conjunction with applicant's goods.  *See*, *e.g.*, In re Copytele Inc., 31 USPQ2d 1540 (TTAB 1994) (combination of SCREEN FAX PHONE held merely descriptive and without incongruity resulting from combination), and In re Lowrance Electronics, 14 USPQ2d 1251 (TTAB 1989) (generic terms COMPUTER and SONAR held just as generic and not incongruous when used in combination).

The fact that AGENTBEANS does not appear in a dictionary is not determinative.  *See* In re Orleans Wines Ltd., 196 USPQ 516 (TTAB 1977).  Likewise, the fact that applicant may be the first and/or only entity using the phrase AGENTBEANS is not dispositive where, as here, the term unequivocally projects a merely descriptive connotation.  *See* In re MBAssociates, 180 USPQ 338, 339

(TTAB 1973).  Moreover, it is not necessary that the term be in common usage in the particular industry before it can be found merely descriptive.  *See* In re National Shooting Sports Foundation, Inc., 219 USPQ 1018, 1020 (TTAB 1983). Anyone marketing software "beans" which have the attributes of "agent" programs, or can be used to construct such programs would, we think, have occasion to use the term AGENTBEANS to convey such fact.

Finally, we agree with the Examining Attorney that third party registrations also are not determinative of the question of registrability of applicant's proposed mark. It is well settled that each case must be taken on its own facts.  In re Pennzoil Products Co., 20 USPQ2d 1753, 1758 (TTAB 1991); and In re Inter-State Oil Co., Inc., 219 USPQ 1229, 1231 (TTAB 1983).  Some of the other marks which have been registered, as the Examining Attorney observes, are distinguishable, because they combine "beans" with what appear to be non-descriptive terms; others have a degree of alliteration or double entendre to them.  While applicant argues that its mark creates a unique commercial impression, we do not agree, and applicant has not articulated what such impression may be.  Moreover, we agree with the Examining Attorney that the "vocabulary used in the computer field changes rapidly" and registration of

some of the marks may have resulted from the lack of evidence that would have supported a refusal at the time the underlying applications were reviewed.  See, in this regard, the NEXIS evidence from the April 7, 1998 issue of PC Magazine, which references the "sudden popularity of Beans."

In sum, we find that prospective users of applicant's software, if confronted with AGENTBEANS used in conjunction therewith, would, without need of thought, imagination or perception, be immediately apprised of both the nature of applicant's goods and a significant characteristic or attribute thereof, i.e., that the software consists of "beans" written in the Java programming language and which will have the characteristics or attributes of "agent" programs, or can be used to build such programs.

Decision:  The refusal of registration is affirmed.

11