This Opinion is a
Precedent of the TTAB

Hearing: April 26, 2017                                    Mailed: June 13, 2017

UNITED STATES PATENT AND TRADEMARK OFFICE

‒‒‒‒

Trademark Trial and Appeal Board

‒‒‒‒

*In re United Trademark Holdings, Inc.*

‒‒‒‒

Serial No. 86836082

‒‒‒‒

Erik M. Pelton of Erik M. Pelton & Associates PLLC,
    for United Trademark Holdings, Inc.

Justine N. Burke, Trademark Examining Attorney, Law Office 121,
    Alyssa Steel, Managing Attorney.

‒‒‒‒

Before Zervas, Bergsman and Greenbaum,
    Administrative Trademark Judges.

Opinion by Bergsman, Administrative Trademark Judge:

United Trademark Holdings, Inc. ("Applicant") seeks registration on the Principal

Register of the mark LITTLE MERMAID (in standard characters) for "dolls," in Class

28.[1]

The Trademark Examining Attorney refused registration of Applicant's mark

under Section 2(e)(1) of the Trademark Act, 15 U.S.C. § 1052(e)(1), on the ground that

---

[1] Application Serial No. 86836082 was filed on December 1, 2015, under Section 1(b) of the
Trademark Act, 15 U.S.C. § 1051(b), based upon Applicant's allegation of a *bona fide*
intention to use the mark in commerce.

Applicant's mark LITTLE MERMAID for "dolls" is merely descriptive of a feature or characteristic of Applicant's goods, namely, dolls with "the appearance of a young, partly human girl sea creature," that is," "a little mermaid."[2] In other words, the Trademark Examining Attorney contends that each word in Applicant's mark retains its descriptive significance in connection with dolls and, therefore, the mark in its entirety is merely descriptive.

Applicant argues that the name "LITTLE MERMAID does not simply mean *any* 'young, imaginary and partly human girl sea creature,' but a *specific* character from a *specific* story that is nearly 200 years old and is in the public domain."[3] In other words, LITTLE MERMAID has two meanings as applied to dolls and one of the meanings (*i.e.,* the public domain, fictional character) is not merely descriptive.[4]

After the Trademark Examining Attorney made the refusal final, Applicant appealed to this Board. We affirm the refusal to register.

"The Little Mermaid" is the title of a fairy tale by the Danish author Hans Christian Andersen.[5] A summary of the story is set forth below:

> The Little Mermaid dwells in an underwater kingdom with her father (the sea king or mer-king), her dowager grandmother, and her five older sisters, each of whom had

---

[2] Trademark Examining Attorney's Brief, 6 TTABVUE 6.

[3] Applicant's Brief, pp. 3-4 (4 TTABVUE 7-8) (internal citation omitted).

[4] In her brief, the Trademark Examining Attorney concedes that LITTLE MERMAID not only describes a feature of the goods (*i.e.,* dolls with the appearance of a young mermaid), but that it is "the name of a character featured in a work of literature in the public domain." 6 TTABVUE 7; *see also* 6 TTABVUE 9 ("the applied-for mark not only features the name of a character from a public domain fairytale, but also describes a feature or characteristic of Applicant's goods, which is hallmark evidence in a finding of descriptiveness.").

[5] Wikipedia.com attached to Applicant's March 30, 2016, Response to an Office Action, TSDR p. 18. All citations to the TSDR record refer to the documents in .pdf format.

> been borne one year apart. When a mermaid turns 15, she is permitted to swim to the surface for the first time to glimpse the world above, and when the sisters become old enough, each of them visits the upper world one at a time every year. As each returns, the Little Mermaid listens longingly to their various descriptions of the world inhabited by human beings.[6]

When the Little Mermaid turns 15, she swims to the surface, falls in love with a handsome prince from a distance, and saves him from drowning. However, the prince was unconscious and never saw the Little Mermaid or knew it was she who saved him. Longing for the prince, the Little Mermaid seeks out the Sea Witch and trades her beautiful voice for human legs. The Little Mermaid goes to the surface, meets the handsome prince and they fall in love. Unfortunately, the prince is forced into an arranged marriage with a princess from a neighboring kingdom. However, "[i]f the Little Mermaid slays the prince with the dagger [given to her by the Sea Witch] and lets his blood drip on her feet, she will become a mermaid once more, all her suffering will end, and she will live out her full life in the ocean with her family." The Little Mermaid cannot bring herself to kill the prince and she transforms into an ethereal earthbound spirit. The tale ends with the promise that"[b]ecause of her selflessness, she will be given a chance to earn her own soul by doing good deeds to mankind for 300 years and will one day rise up to the Kingdom of God."[7]

---

[6] *Id.*

[7] *Id.* at 18-19.

"The Little Mermaid" was first published in 1837 and has been adapted numerous times, including as an animated film by Walt Disney Pictures (1989) and a Broadway stage musical (2008) based on the Walt Disney film.[8]

Section 2(e)(1) of the Trademark Act prohibits registration on the Principal Register of "a mark which, (1) when used on or in connection with the goods of the applicant is merely descriptive . . . of them." 15 U.S.C. § 1052(e)(1). A term is "merely descriptive" within the meaning of Section 2(e)(1) if it "immediately conveys knowledge of a quality, feature, function, or characteristic of the goods or services with which it is used." *In re Chamber of Commerce of the U.S.*, 675 F.3d 1297, 102 USPQ2d 1217, 1219 (Fed. Cir. 2012) (quoting *In re Bayer AG*, 488 F.3d 960, 82 USPQ2d 1828, 1831 (Fed. Cir. 2007)). "On the other hand, if one must exercise mature thought or follow a multi-stage reasoning process in order to determine what product or service characteristics the term indicates, the term is suggestive rather than merely descriptive." *In re Tennis in the Round, Inc.*, 199 USPQ 496, 498 (TTAB 1978); *see also In re Shutts*, 217 USPQ 363, 364-65 (TTAB 1983); *In re Universal Water Sys., Inc.*, 209 USPQ 165, 166 (TTAB 1980).

---

[8] *Id.* at 18 and 21. A statue of the Little Mermaid sits on a rock in the Copenhagen harbor in Denmark. "This small and unimposing statute is a Copenhagen icon and a major tourist attraction." Wikipedia.com attached to Applicant's March 30, 2016 Response to an Office Action, TSDR p. 22. *See also* Copenhagen, **Encyclopaedia Britannica** (2015) (the Little Mermaid statue is one of Copenhagen's most popular tourist attractions). The Board may take judicial notice of information from encyclopedias. *B.V.D. Licensing Corp. v. Body Action Design Inc.*, 846 F.2d 727, 6 USPQ2d 1719, 1721 (Fed. Cir. 1988) ("dictionaries and encyclopedias may be consulted"); *Productos Lacteos Tocumbo S.A. de C.V. v. Paleteria La Michoacana Inc.*, 98 USPQ2d 1921, 1934 n.61 (TTAB 2011); *In re Broyhill Furniture Indus. Inc.*, 60 USPQ2d 1511, 1514 n.4 (TTAB 2001) (dictionary entries and other standard reference works).

Whether a mark is merely descriptive cannot be determined in the abstract or on the basis of guesswork. Descriptiveness must be evaluated "in relation to the particular goods for which registration is sought, the context in which it is being used, and the possible significance that the term would have to the average purchaser of the goods because of the manner of its use or intended use." *In re Chamber of Commerce of the U.S.,* 102 USPQ2d at 1219 (quoting *In re Bayer AG*, 82 USPQ2d at 1831). In other words, we evaluate whether someone who knows what the goods are will understand the mark to convey information about them. *DuoProSS Meditech Corp. v. Inviro Med. Devices, Ltd.,* 695 F.3d 1247, 103 USPQ2d 1753, 1757 (Fed. Cir. 2012); *In re Tower Tech Inc.*, 64 USPQ2d 1314, 1316-17 (TTAB 2002).

When two or more merely descriptive terms are combined, the determination of whether the combined mark also has a merely descriptive significance turns on whether the combination of terms evokes a non-descriptive commercial impression. Generally, if each component retains its merely descriptive significance in relation to the goods, the combination results in a composite that is itself merely descriptive. *In re Oppedahl & Larson LLP*, 373 F.3d 1171, 71 USPQ2d 1370, 1372 (Fed. Cir. 2004) (quoting *Estate of P.D. Beckwith, Inc. v. Comm'r.*, 252 U.S. 538, 543 (1920)); *see also In re Tower Tech, Inc.*, 64 USPQ2d at 1318 (SMARTTOWER merely descriptive of commercial and industrial cooling towers); *In re Sun Microsystems Inc.*, 59 USPQ2d 1084 (TTAB 2001) (AGENTBEANS merely descriptive of computer programs for use in developing and deploying application programs); *In re Putman Publ'g. Co.*, 39 USPQ2d 2021 (TTAB 1996) (FOOD & BEVERAGE ONLINE merely descriptive of

news and information services in the food processing industry). Thus, we must consider the issue of descriptiveness by looking at the mark in its entirety. *See In re Phosean Tech. Inc.,* 103 USPQ2d 1822, 1823 (TTAB 2012); *Grand Canyon West Ranch LLC v. Hualapai Tribe,* 88 USPQ2d 1501, 1505 (TTAB 2008).

There is no question that the composite term LITTLE MERMAID immediately and directly describes a doll featuring the appearance of a young or small mermaid, and Applicant does not argue otherwise. However, Applicant contends that the proposed mark, considered in its entirety, immediately conveys the commercial impression of the name of a particular fictional character in the public domain, and that this aspect of the mark is not merely descriptive of the goods.

Most of the exhibits submitted by the Trademark Examining Attorney refer to various "Little Mermaid" dolls as a princess or in the context of a fairy tale, thus, using the name "Little Mermaid" to refer to the public domain character.[9] Likewise, references to "Disney's Little Mermaid" refer to the Little Mermaid character featured in Disney's relatively recent adaptation of the traditional Little Mermaid fairy tale in the animated film by that company.[10] Based on this record, we agree with Applicant that the immediate commercial impression evoked by the term LITTLE

---

[9] January 27, 2016 Office Action, TSDR pp. 8, 12, 16 ("Little Mermaid, Fairy Tales Collection Annie's Doll Clothes Crochet Pattern"), 19, 22 ("Effanbee Vintage The Little Mermaid Storybook Doll"), 26-27, 28, 29; May 11, 2016 Office Action, TSDR pp. 13, 21.

[10] January 27, 2016 Office Action, TSDR pp. 8, 12, 15, 26-27, 28, 29.

MERMAID proposed for use as a trademark in connection with dolls is the Little Mermaid fictional character.[11]

Our case law concerning whether character names serve as source identifiers or are merely descriptive draws a distinction between situations where the character is in the public domain[12] and where the applicant owns intellectual property rights in the work(s) from which the character arose.[13] As we explained in *In re Carlson Dolls Co.*, a case where we held that MARTHA WASHINGTON for "historical dolls" is merely descriptive because the mark identifies an historical figure which consumers do not necessarily link to commercial entities as they do a fictional character:

> While it can also be *argued* that a characteristic of the dolls bearing either the configuration of the Superman character or the name "SUPERMAN" is that they embody the appearance of the Superman character, an important difference exists which distinguishes that situation from the circumstances presented by the instant application. Superman was and is a proprietary creation, a character featured by a business entity which markets all manner of products, from comic books to dolls, by identifying the common source of those goods with the name and/or image

---

[11] In view of the evidence from Wikipedia regarding the Hans Christian Anderson story, and the numerous dolls in the form of Mermaids, and because Disney made a movie based on the story, we agree with Applicant that LITTLE MERMAID has significance beyond the plain meaning of its component words. Applicant's Brief, p. 3 (4 TTABVUE 7).

[12] *See In re Carlson Dolls Co.*, 31 USPQ2d 1319, 1320 (TTAB 1994).

[13] *See, e.g., In re DC Comics, Inc.*, 689 F.2d 1042, 215 USPQ 394 (CCPA 1982) (drawings of the fictional characters Superman, Batman and Joker were held to function as trademarks for toy dolls of such characters); *In re Red Robin Enters., Inc.*, 222 USPQ 911 (TTAB 1984); *In re Paramount Pictures Corp.*, 213 USPQ 1111 (TTAB 1982) (television character names MORK & MINDY serve as a trademark although used and presented as ornamentation for the decalcomania goods involved); *In re Florida Cypress Gardens, Inc.*, 208 USPQ 288 (TTAB 1980) (designation consisting of name of clown is registrable for entertainment services despite fact that name also identifies a fictitious character played by performers in applicant's shows); *Warner Bros, Inc. v. Road Runner Car Wash, Inc.*, 189 USPQ 430 (TTAB 1975) (ROAD RUNNER held to be a protectable trademark).

of its proprietary fictional character. Consumers reasonably expect goods and services bearing the name or image of this character to emanate from, or be produced or marketed under license from, the entity which created the character and therefore owns the right to profit from commercialization of it.

This is not the case with historical figures, whose names and images are not necessarily linked to particular commercial entities. In short, while prospective purchasers of dolls may reasonably expect dolls labeled with the name "SUPERMAN" or the likeness of the Superman character to emanate from the same source which is responsible for the comic books and other products which bear the name or image of the character, the likely reaction of ordinary consumers presented with "MARTHA WASHINGTON" on tags attached to "historical dolls" made to look like women in colonial clothing would be that the name indicates not the commercial source of the dolls, but rather is used as a description of the historical figure the dolls are supposed to represent.

31 USPQ2d at 1320.

Similarly, a fictional public domain character like the Little Mermaid of the Hans Christian Anderson fairy tale is not necessarily linked to a specific commercial entity and may be presented in various embodiments because prospective purchasers expect dolls labeled as LITTLE MERMAID to represent the fairy tale character and, thus, describes the purpose or function of the goods (*i.e.,* to represent the Little Mermaid of the fairy tale). *See, e.g., DuoProSS*, 103 USPQ2d at 1755 ("a mark is merely descriptive if it conveys information regarding a function, or purpose, or use of the goods."); *see also Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 224 USPQ 327, 332 (1985) (noting that the Trademark Act contains safeguards to prevent trademark protection from "tak[ing] from the public domain language that is merely descriptive"); *In re Colonial Stores Inc.,* 394 F.2d 549, 157 USPQ 382, 383 (CCPA

1968) ("Thus, a mark which merely denotes the ingredients, quality or composition of an article is not capable of being exclusively adopted and used as a trademark since, for policy reasons, *descriptive words* must be left free for public use."); *In re Rogers Corp.,* 189 USPQ 220, 222 (TTAB 1975) ("As indicated in the cited case [*Colonial Stores*], descriptive terms are regarded as words in the public domain in the sense that all sellers should be free to truthfully use these notations to describe their merchandise; and that hence an exclusive and proprietary right, the necessary ingredients of a trademark, cannot be acquired in such mark without a showing of secondary meaning.").

The record supports the conclusion that prospective customers immediately know that dolls described as or named LITTLE MERMAID refer to the fictional public domain character,[14] and other doll makers interested in marketing a doll that would depict the character have a competitive need to use that name to describe their products. *See Hoover Co. v. Royal Appliance Mfg. Co.,* 238 F.3d 1357, 57 USPQ2d 1720, 1722 (Fed. Cir. 2001) ("descriptive terms are in the public domain and should be free for use by all who can truthfully employ them to describe their goods."); *Sperry Rand Corp. v. Sunbeam Corp.,* 442 F.2d 979, 170 USPQ 37, 38 (CCPA 1971) ("The registration of appellant's trademark LECTRONIC will not interfere with the use of "electronic" by appellee."); *In re France Croissant, Ltd.,* 1 USPQ2d 1238, 1239 (TTAB 1986); *In re Aid Lab., Inc.,* 223 USPQ 357, 359 (TTAB 1984) ("We have every reason

---

[14] *E.g.*, Wikipedia.com attached to Applicant's March 30, 2016, Response to an Office Action, TSDR p. 18.

to suspect that other manufacturers and merchants of insecticides have a competitive need to use descriptive terms such as 'bug mist' to describe and promote their insecticide sprays.").

Applicant argues that "[m]arks comprised of public domain characters have been regularly registered by the USPTO on the Principal Register in connection with dolls, figurines, or action figures depicting those characters," without any requirement to disclaim the exclusive right to use the character name, and without being required to show that the character name had acquired distinctiveness, or have been registered on the Supplemental Register, thereby showing that such character names are capable of serving as marks.[15] In support of the argument, Applicant cites third-party registrations (*e.g.*, Registration No. 3057988 for the mark WALT DISNEY'S CINDERELLA and design, Registration No. 3224000 for the mark RAPUNZEL, and Registration No. 3636910 for the mark TINKER BELL.).[16]

It is axiomatic that we must decide each case on its own merits. The bare fact that the USPTO allowed the marks in the referenced third-party registrations to register is of little persuasive value and does not dictate the result in this case nor does it rebut our finding that LITTLE MERMAID is descriptive in the context of this mark. When a mark is refused registration, and the applicant appeals, we must decide the case based on the record in that case in accordance with the governing statutory standard. We are not estopped or disqualified from applying the statute because, in

---

[15] Applicant's Brief, p. 4 (4 TTABVUE 8).

[16] March 30, 2016 Response to Office Action, TSDR 26-70.

a prior application which we did not review (and could not have), an examining attorney (or attorneys) may have overlooked a relevant statutory provision and, perhaps erroneously, allowed an application to register.[17]

In summary, when consumers encounter a doll displaying the LITTLE MERMAID mark, the evidence before us persuades us that they will understand the mark to describe the public domain character in the Hans Christian Andersen fairy tale, as well as a young or little mermaid, rather than perceiving LITTLE MERMAID as a mark identifying the commercial source of the goods. Accordingly, we find that LITTLE MERMAID when proposed for use in connection with dolls is merely descriptive.

**Decision**: The refusal to register Applicant's mark LITTLE MERMAID is affirmed.

---

[17] *See, e.g.*, *In re Cordua Rests., Inc.*, 823 F.3d 594, 600, 118 USPQ2d 1632, 1635 (Fed. Cir. 2016) ("The PTO is required to examine all trademark applications for compliance with each and every eligibility requirement, including non-genericness, even if the PTO earlier mistakenly registered a similar or identical mark suffering the same defect."); *In re Shinnecock Smoke Shop*, 571 F.3d 1171, 1174, 91 USPQ2d 1218, 1221 (Fed. Cir. 2009) ("Even if all of the third-party registrations should have been refused registration under section 1052(a), such errors do not bind the USPTO to improperly register Applicant's marks.") (citation omitted); *In re Boulevard Entm't, Inc.*, 334 F.3d 1336, 1343, 67 USPQ2d 1475, 1480 (Fed. Cir. 2003) ("The fact that, whether because of administrative error or otherwise, some marks have been registered even though they may be in violation of the governing statutory standard does not mean that the agency must forgo applying that standard in all other cases.").