THIS OPINION IS A PRECEDENT
OF THE T.T.A.B.

Mailed:
May 20, 2011

**UNITED STATES PATENT AND TRADEMARK OFFICE**

_____

**Trademark Trial and Appeal Board**

_____

Productos Lacteos Tocumbo S.A. de C.V.

v.

Paleteria La Michoacana, Inc.

_____

Cancellation No. 92047438

_____

Stephen L. Anderson of Anderson & Associates for Productos Lacteos Tocumbo S.A. de C.V.

D. Greg Durbin of McCormick, Barstow, Sheppard, Wayte & Caruth LLP for Paleteria La Michoacana, Inc.

_____

Before Walters, Bergsman and Ritchie, Administrative Trademark Judges.

Opinion by Bergsman, Administrative Trademark Judge:

Productos Lacteos Tocumbo S.A. de C.V. ("petitioner") filed a petition to cancel Registration No. 3210304 for the mark LA INDITA MICHOACANA and design, shown below, for "ice cream and fruit products, namely fruit bars," in International Class 30, owned by Paleteria La Michoacana, Inc. ("respondent").[1]

---

[1] Issued February 20, 2007.



As grounds for cancellation, petitioner alleged likelihood of confusion, fraud and dilution.  Because petitioner presented no arguments in its brief regarding its fraud and dilution claims, we deem petitioner to have waived those claims, and we have given them no consideration.

With respect to its likelihood of confusion claim, petitioner alleged that prior to any use by respondent of its mark, petitioner and its related company or licensees have used the marks LA MICHOACANA NATURAL and design and LA FLOR DE MICHOACAN for, *inter alia,* ice cream, fruit ice bars and retail store services featuring ice cream and fruit ice bars and that respondent's mark so resembles petitioner's marks as to be likely to cause confusion.  Specifically, petitioner claimed ownership of Registration No. 2830401 for the mark LA FLOR DE MICHOACAN, in typed drawing form, for "ice cream," in Class 30.[2]  Also, petitioner claimed

---

[2] Issued April 6, 2004; Sections 8 and 15 affidavits accepted and acknowledged.  Petitioner's registration states that "[t]he English translation for the word [sic] 'LA FLOR DE MICHOACAN' in the mark is 'The blossom of Michoacan.'"

ownership of application Serial No. 78954490 for the mark LA

MICHOACANA NATURAL and design, shown below, for the

following goods and services:

> Cones for ice cream; flavored ices;
> frozen yoghurt; fruit ice; fruit ice
> bar; fruit ices; ice; ice candies; ice
> cream; ice cream drinks; ice cream
> mixes; ice cream powder; ice cubes; ice
> milk bars; ice-cream cakes, in Class 30;
> and
>
> Retail shops featuring ice cream, fruit
> bars, drinks and snacks; retail stores
> featuring ice cream, fruit bars, drinks
> and snacks, in Class 35.[3]



Petitioner alleges that respondent's registration has been

cited as a Section 2(d) bar to petitioner's above-noted

application.

In its answer, respondent denied the salient

allegations in the petition for cancellation.

### The Record

By operation of Trademark Rule 2.122, 37 CFR §2.122,

the record includes the pleadings and the registration file

for respondent's mark.  The record also includes the

following testimony and evidence:

A.   Petitioner's Evidence.

1.   Notice of reliance on respondent's responses to petitioner's requests for admission Nos. 12, 21, 31 and 40.

2.   Notice of reliance on respondent's responses to petitioner's interrogatory Nos. 7, 9, 14 and 26.

3.   Deposition upon written questions, with attached exhibits, of Marco Antonio Andrade Malfavón, a director of petitioner.

4.   Testimony deposition, with attached exhibits, of Jorge Andrade Malfavón, a director of petitioner, an officer of El Michoacana Natural, Inc., a licensee of petitioner. He is also Marco Antonio Andrade Malfavón's brother.

5.   Testimony deposition, with attached exhibits, of Rigoberto Fernandez, an officer of El Michoacana Natural, Inc., licensee of petitioner.

6.   Notice of reliance on respondent's response to petitioner's interrogatory No. 8.

7.   Notice of reliance on a copy of application Serial No. 78954490 for the mark LA MICHOACANA NATURAL and design, shown below[4]

---

[3] Filed August 17, 2006.  Petitioner disclaimed the exclusive right to use the word "Natural."
[4] The application includes the statement that "[t]he foreign wording in the mark translates into English as the natural woman from Michoacan."



and application Serial No. 78771243 for the mark comprising the design of an Indian girl, shown below



8.    Rebuttal deposition, with attached exhibits, of Ruben Gutierrez, C.E.O. of Tropicale Foods.  He is the brother and former partner of Ignacio Gutierrez, who is respondent's president.

B.    Respondent's evidence.

1.    Notice of reliance on petitioner's responses to respondent's requests for admission Nos. 1, 3 and 5.

2.    Notice of reliance on petitioner's responses to respondent's interrogatory Nos. 16 and 20.

3.    Notice of reliance on the following federally-registered marks:

        a.    A certified copy of petitioner's Registration No. 3249113 for the mark LA FLOR DE MICHOACAN and design, shown below, for, *inter alia,* frozen fruits, ice cream, frozen yogurt and "retail shops featuring ice-cream," prepared

by the U.S. Patent and Trademark Office showing the current status of and title to the registration.[5]



c.   Three third-party registrations owned by different entities incorporating the term LA MICHOACANA:  two for ice cream and one for tortillas.

4.   Testimony deposition, with attached exhibits, of Patricia Gutierrez, respondent's Vice President, Secretary and Treasurer.

5.   Testimony deposition, with attached exhibits, of Ignacio Gutierrez, respondent's President and husband of Patricia Gutierrez.

6.   Testimony deposition, with attached exhibits, of Karl Jepsen, respondent's Chief Financial Officer.

7.   Testimony deposition, with attached exhibits, of Angelita Morales, a graphic designer.

---

[5] Issued June 5, 2007 based on an application filed December 8, 2005, and claiming first use anywhere and first use in commerce on April 20, 2001.  The registration includes the statement that "[t]he foreign wording in the mark translates into English as THE BLOSSOM OF MICHOACAN."

8.    Second testimony deposition, with attached exhibits, of Rigoberto Fernandez an officer of petitioner's licensee El Michoacana Natural, Inc.

<u>Preliminary Issues</u>

A.    <u>Whether likelihood of confusion based petitioner's use of the mark LA MICHOACANA and the mark comprising an Indian girl design was tried by implied consent?</u>

In its brief, petitioner claimed rights to the mark LA MICHOACANA and the mark comprising the design of an Indian girl, shown below (hereinafter "petitioner's Indian girl").



In its brief, respondent objected to the evidence regarding petitioner's use of the mark LA MICHOACANA and petitioner's Indian girl on the grounds that they were not pleaded and that petitioner did not amend its petition for cancellation to assert rights in those marks.[6]

In its reply brief, petitioner acknowledged that it did not plead ownership of either mark but argued that throughout the proceeding it had asserted rights in those marks and now it seeks leave to amend the petition to conform to the evidence.[7]

---

[6] Respondent's Brief, pp. 3-4.
[7] Petitioner's Reply Brief, p. 22.

Because petitioner may not rely on unpleaded marks, we must determine whether petitioner's attempt to prove its use of the mark LA MICHOACANA and petitioner's Indian girl was tried by implied consent.

> Implied consent to the trial of an unpleaded issue can be found only where the nonoffering party (1) raised no objection to the introduction of evidence on the issue, and (2) was fairly apprised that the evidence was being offered in support of the issue.

TBMP §507.03(b). *See also Morgan Creek Productions Inc. v. Foria International Inc.*, 91 USPQ2d 1134, 1138 (TTAB 2009); *H.D. Lee Co. v. Maidenform Inc.*, 87 USPQ2d 1715, 1720-1721 (TTAB 2008); *Long John Silver's Inc. v. Lou Scharf Inc.*, 213 USPQ 263, 266 n.6 (TTAB 1982) (applicant's objection to the introduction of evidence regarding an unpleaded issue obviated the need to determine whether the issue had been tried by implied consent); *Boise Cascade Corp. v. Cascade Coach Co.*, 168 USPQ 795, 797 (TTAB 1970) ("Generally speaking, there is an implied consent to contest an issue if there is no objection to the introduction of evidence on the unpleaded issue, as long as the adverse party was fairly informed that the evidence went to the unpleaded issue").

> The question of whether an issue was tried by consent is basically one of fairness. The non-moving party must be aware that the issue is being tried, and therefore there should be no doubt on this matter.

8

*Morgan Creek Productions Inc. v. Foria International Inc.,* 91 USPQ2d at 1139.

On September 16, 2009, petitioner filed notices of reliance on respondent's responses to petitioner's requests for admission and responses to interrogatories. In the notices of reliance, petitioner expressly stated that respondent's responses were relevant to show petitioner's priority of numerous marks, including, *inter alia,* LA MICHOACANA and petitioner's Indian girl. Petitioner's Indian girl was identified as the subject of application Serial No. 78771243, claiming use in commerce as of April 20, 2001.

Marco Antonio Andrade Malfavón (hereinafter "Marco Malfavón"), a director of petitioner, testified upon written questions that petitioner has authorized the use of the marks LA MICHOACANA and "the design of a little Indian."[8] The deposition was filed on November 11, 2009. He also testified that petitioner licensed the use of the marks LA MICHOACANA and "'Diseño Indita'(Design of an Indian Girl)" in the United States.[9]

On September 9, 2009, petitioner took the testimony deposition of Jorge Andrade Malfavón (hereinafter "Jorge Malfavón"), a director of petitioner, an officer of

---

[8] Marco Malfavón Dep., pp. 22-23, questions 63 and 65.
[9] *Id.* at pp. 29-30, 32-33 and 34-39, questions 83, 84, 86, 91, 93 and 95-108.

petitioner's licensee El Michoacana Natural, Inc., and the brother of Marco Malfavón.  Jorge Malfavón corroborated petitioner's efforts to license the use of the marks LA MICHOACANA and petitioner's Indian girl in the United States.[10]  Jorge Malfavón also specifically testified regarding the use of the marks LA MICHOACANA and petitioner's Indian girl in the United States as of 2001.[11]  Counsel for respondent attended the deposition.  Counsel for respondent did not object to the testimony regarding the marks LA MICHOACANA or petitioner's Indian girl and he did not cross-examine the witness.

Also on September 9, 2009, petitioner took the testimony deposition of Rigoberto Fernandez, the owner of three LA MICHOACANA ice cream stores.[12]  Mr. Fernandez opened his first store in 2001.[13]  Mr. Fernandez testified that he was licensed to use the marks LA MICHOACANA and petitioner's Indian girl by petitioner[14] and he identified a menu from his store in West Palm Beach, Florida and cups, shirts, hats and water bottles displaying petitioner's Indian girl that he used since 2001.[15]  Counsel for

---

[10] Jorge Malfavón Dep., pp. 15-17.
[11] Jorge Malfavón Dep., pp. 31-32, Exhibits 30 and 32.
[12] Fernandez Dep., p.  6.
Q.  What stores do you own?
A.  West Palm, Naples, and Fort Myers, La Michoacana.

[13] *Id.* at pp. 6, 12.
[14] *Id.* at pp. 8-10.
[15] *Id.* at pp. 24-27, Exhibits 29 and 30.

respondent attended the deposition. Counsel for respondent did not object to the testimony regarding the marks LA MICHOACANA or petitioner's Indian girl design and he cross-examined the witness regarding petitioner's Indian girl design.[16]

Subsequently, on February 1, 2010, respondent deposed Mr. Fernandez regarding, *inter alia,* his license to use the marks LA MICHOACANA and petitioner's Indian girl[17] as well as the witness's use of the Indian girl design.[18]

On March 12, 2010, petitioner filed a notice of reliance on respondent's response to petitioner's Interrogatory No. 8 to show that respondent "neither coined nor drew [respondent's Indian girl design], but rather knowingly intentionally infringed upon and misappropriated such marks of the petition with the specific intent to cause confusion and deception."[19]

On March 18, 2010, petitioner filed a notice of reliance on official records of the USPTO, including a copy of application Serial No. 78771243 for petitioner's Indian girl. Petitioner explained that the application was relevant to show that it had superior rights to the mark and that respondent filed its application in bad faith.

---

[16] *Id.* at pp. 65-66.
[17] Fernandez Dep. 2, pp. 17-24 and 57-58
[18] *Id.* at pp. 66-69.
[19] Notice of reliance, p. 2 (statement of relevance).

After reviewing the testimony and evidence introduced during the trial periods, we find that petitioner's rights in or likelihood of confusion based on petitioner's rights in the mark LA MICHOACANA and petitioner's Indian girl was tried by implied consent. When petitioner filed its notices of reliance in September 2009, it specifically stated that respondent's discovery responses were relevant to show petitioner's priority of numerous marks, including, *inter alia,* LA MICHOACANA and petitioner's Indian girl. Petitioner further emphasized its intention to rely on those marks through the testimony depositions of Jorge Malfavón and Rigoberto Fernandez. During the depositions, respondent did not object to that testimony and it had the opportunity to cross-examine the witnesses. In fact, in a separate deposition during its own testimony period, respondent deposed Mr. Fernandez regarding the use of those marks. In view of the foregoing, we find that respondent did not raise a timely objection to the introduction of any testimony or evidence regarding the marks LA MICHOACANA and petitioner's Indian girl and that respondent was fairly apprised that petitioner was claiming ownership of and prior use for those marks. Accordingly, respondent's objection to petitioner's testimony and evidence regarding the marks LA MICHOACANA and petitioner's Indian girl is overruled and we deem the

12

pleadings amended to conform to the evidence pursuant to Fed. R. Civ. P. 15(b).

B. <u>Whether respondent's use of its Indian girl design as a stand alone mark or in connection with a term other than LA INDITA MICHOACANA was tried by implied consent?</u>

Respondent did not plead as an affirmative defense that it would rely on its use and registration of marks comprising an Indian girl design (hereinafter "respondent's Indian girl") for ice cream and fruit bars to prove prior use of that mark or as the basis for the prior registration (or Morehouse) defense[20] (*i.e.,* the defense that a petitioner cannot suffer damage, within the meaning of Section 14 of the Trademark Act, by the maintenance of a registration if the registrant owns unchallenged registrations of that mark for the same goods).  Mere denial by respondent of petitioner's allegation of priority of use is sufficient to put petitioner on notice that it must prove petitioner's pleaded priority, but it is not sufficient to put petitioner on notice that any priority petitioner will attempt to prove will have to predate the priority that respondent will attempt to prove through tacking, or that respondent is relying on the prior registration defense. *See H.D. Lee Co. v. Maidenform Inc.,* 87 USPQ2d 1715, 1720 (TTAB 2008).  Nevertheless, respondent introduced evidence

---

[20] *Morehouse Mfg. Corp. v. J. Strickland & Co.,* 407 F.2d 881, 160 USPQ 715 (CCPA 1969).

and testimony regarding its use and registration of respondent's Indian girl as a stand-alone mark. Accordingly, we must determine whether either respondent's attempt to tack the prior use of respondent's Indian girl or the prior registration defense was tried by implied consent.

On September 16, 2009, petitioner filed a notice of reliance on respondent's responses to petitioner's requests for admissions Nos. 12 and 40 wherein respondent admitted that it had not used its LA INDITA MICHOACANA and design mark at issue in this case prior to February 21, 2005. Petitioner also submitted a notice of reliance on respondent's response to interrogatory No. 14 wherein respondent produced an invoice dated February 22, 2005 to identify a document supporting respondent's first use. There was no indication that respondent would be asserting priority based on its use of a mark comprising respondent's Indian girl or would be relying on any mark other than the mark in the registration sought to be cancelled.

In its first notice of reliance, respondent introduced certified copies prepared by the U.S. Patent and Trademark Office showing the current title and status of two federally-registered Indian girl marks, shown below, owned by respondent, both for "ice cream; fruit bars."

14

1.    Registration No. 2905172, issued November 23, 2004.[21]



2.    Registration No. 2968652, issued July 12, 2005.[22]



Respondent explained that these registrations were made of record "to demonstrate among other things, the validity of the registration(s), Registrant's right to use the mark(s) on the identified goods, Registrant's exclusive right to use the mark(s), and Registrant's continuous use of the mark(s)."[23]  Respondent did not state that it would be asserting the prior registration defense.

Subsequently, Patricia Gutierrez, Vice President, Secretary and Treasurer of respondent, authenticated the registrations during her testimony deposition.[24]  Ms. Gutierrez also testified that respondent used respondent's

---

[21] A section 8 affidavit has been accepted.
[22] A section 8 affidavit has been accepted.
[23] Notice of reliance, p. 2.
[24] Patricia Gutierrez Dep., pp. 9-11, Exhibits 2 and 3.

Indian girl in connection with ice cream and fruit bars at least as early as 1999.[25]

On cross examination, Ignacio Gutierrez, president of respondent, testified that he created respondent's Indian girl and that he was unaware that "as early as 2001 that identical mark was being used by [petitioner]."[26] Respondent also introduced the testimony of Angelita Morales, a graphic designer, who testified that in 2004, Ignacio Gutierrez gave her a drawing of respondent's Indian girl and the words LA MICHOACANA ES NATURAL, and that she transferred that drawing to an electronic file in order to edit it to create a more professional appearance.[27]

Petitioner, in its brief, argued that well prior to 2005, the earliest date on which respondent purportedly may rely, petitioner had used its marks LA MICHOACANA and petitioner's Indian girl.[28] Petitioner did not reference any use or registration by respondent of respondent's Indian girl as a stand-alone mark.

Respondent, in its brief, referenced the evidence and testimony regarding its use of respondent's Indian girl at

---

[25] Patricia Gutierrez Dep., pp. 23-24.
[26] Ignacio Gutierrez Dep., pp. 49-50.
[27] Morales Dep.
[28] Petitioner's Brief, pp. 25-26.  Respondent filed its application for registration on June 28, 2005 and, as discussed below, made its first sales of products bearing the registered mark on February 21, 2005.

least as early as 1999,[29] but did not argue for purposes of tacking that it had prior use of respondent's Indian girl or that petitioner was not damaged under a prior registration defense because of the existence of respondent's other two Indian girl registrations.

After reviewing the testimony and evidence introduced during the trial periods, as well as the briefs of the parties, we find that respondent's use and registration of its Indian girl for ice cream and fruit bars did not put petitioner on notice that the testimony and evidence would be used by respondent to tack the prior use of respondent's Indian girl to prove priority or, in the alternative, to assert the prior registration defense. For example, the testimony of Angelita Morales regarding when she created the mark at issue does not support the notion that respondent is claiming the use and registration of respondent's Indian girl as a stand-alone mark to demonstrate its priority. The Morales testimony creates the impression that respondent is attempting to establish 2004-2005 as its date of first use. In view of the foregoing, we find that the issues of tacking and the prior registration defense were not tried by implied consent. Thus, we only consider respondent's testimony and evidence regarding its use and registration of respondent's

---

[29] Respondent's Brief, p. 10.

17

Indian girl for whatever probative value they have vis-à-vis the mark sought to be cancelled.

C.    Petitioner's family of marks argument.

In its brief, petitioner raised for the first time the claim that it is the owner of a "family of marks," presumably based on the word "Michoacana."  Respondent objected to petitioner's claim.  Petitioner's reference to a family of marks in its brief will not be considered because this claim was neither pleaded nor tried by the parties. *See Standard Knitting Ltd. v. Toyota Jidosha Kabushiki Kaisha,* 77 USPQ2d 1917, 1929 n. 17 (TTAB 2006); *Sunken Products Co. v. Sunex International Inc.,* 1 USPQ2d 1744, 1747 n. 12 (TTAB 1987).

D.    The probative value of Spanish documents.

During the depositions of its witnesses, petitioner introduced several documents written in Spanish without providing English translations.[30]  Respondent did not raise any objections to these documents during the depositions or in its brief and, in fact, treated them as being of record. Because the Board conducts its proceedings in English, these documents have no probative value.  *See Hard Rock Cafe Licensing Corp. v. Elsea,* 48 USPQ2d 1400, 1405 (TTAB 1998)(holding that documents in a language other than

---

[30] *See e.g.,* Marco Malfavón Dep., Exhibit 11 (petitioner's articles of incorporation, Exhibit 12 (petitioner's trademark

English are inadmissible).  Nevertheless, because respondent did not raise any objections to the testimony regarding the documents and treated them as being of record, we have considered the testimony of the witnesses regarding the documents.

E.    Objections raised for the first time in petitioner's reply brief are untimely.

Petitioner objected to the depositions of Karl Jepsen and Angelita Morales at the beginning of their respective depositions on the ground that the witnesses had not been previously identified as witnesses in response to written discovery or pretrial disclosures.  In its main brief, petitioner did not discuss any evidentiary objections.  However, in its reply brief, petitioner renewed objections to the testimony depositions of Karl Jepsen and Angelita Morales.

In order to preserve an objection that was seasonably raised at trial, a party must maintain the objection in its opening brief on the case.  *See Hard Rock Café International (USA) Inc. v. Elsea*, 56 USPQ2d 1504, 1507 n.5 (TTAB 2000) (objection to exhibit raised during deposition but not maintained in brief is deemed waived); and *Reflange Inc. v. R-Con International*, 17 USPQ2d 1125, 1126 n.4 (TTAB 1990) (objections to testimony and exhibits made during

license with Jorge Malfavón), and Exhibit 13 (petitioner's trademark license with Rigoberto Fernandez).

depositions deemed waived where neither party raised any objection to specific evidence in its brief).  *See also* TBMP §707.03(c) (2d. ed. rev. 2004).

Because petitioner did not maintain its objections in its opening brief on the case, we deem the objections to be waived.  Petitioner cannot wait until its reply brief to maintain objections; to allow petitioner's objection in its reply brief would effectively foreclose respondent from responding to the objections.  *Kohler Co. v. Baldwin Hardware Corp.,* 82 USPQ2d 1100, 1104 (TTAB 2007)(objection raised at trial waived when petitioner waited until its reply brief to renew objections).  Accordingly, petitioner's objection is overruled and the depositions of Karl Jepsen and Angelita Morales have been considered.

F.    Other objections.

With respect to the remaining evidentiary objections, we choose not to make specific rulings on each and every objection.  In this regard, the Board is capable of weighing the relevance and strength or weakness of the objected-to testimony and evidence, including any inherent limitations on the value of particular items in evidence, and this precludes the need to strike the testimony and evidence.  As necessary and appropriate, we will point out in this decision any limitations applied to the evidence or otherwise note that the evidence cannot be relied upon in

20

the manner sought.  Finally, while we have considered all the evidence and arguments of the parties, we do not rely on evidence not discussed herein.

Standing

During the testimony of Jorge Malfavón, petitioner introduced into evidence Registration No. 2830401 for the mark LA FLOR DE MICHOACAN, in typed drawing form, for "ice cream," with Mr. Malfavón attesting to petitioner's ownership and the current status of the registration.[31] Petitioner also attempted to introduce Registration No. 3249113 for the mark LA FLOR DE MICHOACAN and design (noted above in respondent's evidence) but failed to have Mr. Malfavón testify as to the current status of the registration.  However, because respondent introduced a certified copy of the registration through a notice of reliance, the registration is of record.

Jorge Malfavón, a director of petitioner, testified that "[a]t the beginning of 2001, around March or April," he began using the trademarks LA MICHOACANA NATURAL, LA MICHOACANA NATURAL and design, LA MICHOACANA, LA FLOR DE MICHOACAN, and petitioner's Indian girl in the United States

---

[31] Registered April 6, 2004 based on an application filed April 18, 2001. (Jorge Malfavón Dep. pp. 24-25, Exhibit 24).

21

in connection with ice cream, flavored waters, and ice cream bars as a licensee of petitioner.[32]

The registrations and testimony as discussed above are sufficient to demonstrate that petitioner has a real interest in this proceeding, and therefore has standing. *Lipton Industries, Inc. v. Ralston Purina Co.,* 670 F.2d 1024, 213 USPQ 185, 189 (CCPA 1982).

Priority

In order for petitioner to prevail on its Section 2(d) claim, it must prove that it has a proprietary interest in its marks and that such interest was obtained prior to either the filing date of respondent's application for registration or, if earlier, respondent's proven date of first use. *Herbko International Inc. v. Kappa Books Inc.,* 308 F.3d 1156, 64 USPQ2d 1375, 1378 (Fed. Cir. 2002); *Otto Roth & Co., Inc. v. Universal Corp.,* 640 F.2d 1317, 209 USPQ 40, 43 (CCPA 1981); *Miller Brewing Co. v. Anheuser-Busch Inc.,* 27 USPQ2d 1711, 1714 (TTAB 1993).

Respondent filed its application for registration on June 28, 2005, claiming first use anywhere and in commerce as of February 21, 2005. The evidence shows that respondent made its first sales of products bearing the registered mark

---

[32] Jorge Malfavón Dep. pp. 16-17. *See also* Rigoberto Fernandez Dep., p. 10.

on February 21, 2005.[33]  In view of the foregoing, petitioner must establish that it first used its marks prior to February 21, 2005.

A.    The Indian girl design.

Petitioner is a family-run Mexican company that produces and sells ice cream and fruit bars.[34]  Petitioner uses "the design of a little Indian" in connection with the sale of ice cream bars, fruit bars, ice cream pops and paletas (a type of ice cream bar).[35]  On March 3, 2001, petitioner executed a trademark license agreement with El Michoacana Natural, Inc., a Florida corporation, signed by Jorge Malfavón on behalf of El Michoacana Natural, Inc. for the marks LA MICHOACANA NATURAL, LA MICHOACANA, LA FLOR DE MICHOACAN, and the "Diseño Indita" (petitioner's Indian girl)  for use in the United States.  As noted above, Jorge Malfavón is a director of petitioner and the brother of Marco Malfavón.[36]  At the same time that petitioner licensed the marks to El Michoacana Natural, Inc., it also licensed those marks to Rigoberto Fernandez.[37]  Mr. Fernandez is also

---

[33] Ignacio Gutierrez Dep., pp. 31-33; Patricia Gutierrez Dep. pp. 34 and 57-58; Respondent's response to petitioner's requests for admission Nos. 12 and 13.
[34] Marco Malfavón Dep., pp. 5 and 23-25, question Nos. 3, 4, 66 67 ("it is a family business"), 69, 72; Jorge Malfavón Dep., p. 6.
[35] Marco Malfavón Dep., pp. 22-23, question Nos. 64 and 65.
[36] Marco Malfavón Dep., pp. 27-34, question Nos. 77-89 and 91-95 and Exhibit 12; Jorge Andrade Malfavón Dep., pp. 6, 15-17.
[37] Marco Malfavón Dep., pp. 34-39, question Nos. 96-110 and Exhibit 13; Rigoberto Fernandez Dep., pp. 8-10.

an officer of El Michoacana Natural, Inc.[38]  In 2001, El Michoacana Natural, Inc. sold various products for manufacturing ice cream to Rigoberto Fernandez on behalf of petitioner.[39]

Rigoberto Fernandez owns three ice cream stores in Florida.[40]  Petitioner, through its licensee, Rigoberto Fernandez and El Michoacana Natural, Inc., began using petitioner's Indian girl in connection with the sale of ice cream and ice cream bars in March or April 2001.[41]

Jorge Malfavón and Rigoberto Fernandez identified the menu, cup, hat and shirt, shown below, as representative of the use of the Indian girl design since 2001.[42]

---

[38] Rigoberto Fernandez Dep., p. 6.
[39] Jorge Malfavón Dep., pp. 18-19.
[40] Fernandez Dep., p. 6; Fernandez Dep. 2, pp. 14-16.
[41] Jorge Malfavón Dep., pp. 16-17 and 32, Exhibits 29 and 30; Rigoberto Fernandez Dep., p. 10.  The relationship between Rigoberto Fernandez and El Michoacana Natural, Inc. was not fully developed and is not entirely clear.
[42] Jorge Malfavón Dep., p. 32 and Rigoberto Fernandez Dep., pp. 26, Exhibits 29 and 30.  Mr. Fernandez also identified petitioner's Indian girl used on a package for an ice cream bar in Exhibit 30, but the photograph is not clear as to the use of the mark.  *See also* Rigoberto Fernandez Dep. 2, pp. 66-69.





In view of the foregoing, we find that petitioner, through its licensees, began using petitioner's Indian girl in connection with the sale of ice cream and ice cream bars in the United States in April 2001 as demonstrated by the display of the Indian girl in Fernandez's stores on menus, hats, cups and shirts.

B.    Marks that include the word "Michoacana."

Marco Malfavón testified that petitioner began using the mark LA MICHOACANA NATURAL and design, shown below, for

ice cream products in Mexico in 1995[43] and in commerce with the United States on March 3, 2001.[44]



Jorge Malfavón testified that his company began using LA MICHOACANA NATURAL and design in the United States in connection with the sale of ice cream, ice cream bars and flavored waters "[a]t the beginning of 2001, around March or April."[45]

Jorge Malfavón also testified that his company used the mark LA FLOR DE MICHOACAN and design, shown below, for ice cream bars prior to December 2003.[46]



---

[43] Marco Antonio Andrade Malfavón Dep., p. 16, question No. 43. Mr. Malfavón also testified that petitioner used the mark LA MICHOACANA NATURAL, in typed drawing form, in Mexico as of 1995. (Marco Malfavón Dep., p. 19, question No. 54). Later, Mr. Malfavón testified that petitioner used the LA MICHOACANA NATURAL in connection with ice cream as early as 1992 (Marco Antonio Andrade Malfavón Dep., pp. 43-44, question Nos. 120 and 125).
[44] Marco Malfavón Dep., p. 43, question No. 121 and Exhibit 15.
[45] Jorge Malfavón Dep., pp. 16-19.
[46] Jorge Malfavón Dep., p. 25.

As indicated above, Jorge Malfavón introduced into evidence Registration No. 2830401 for the mark LA FLOR DE MICHOACAN, in typed drawing form, for "ice cream."  The mark was registered April 6, 2004 based on an application filed April 18, 2001.[47]

Rigoberto Fernandez testified that he has sold ice cream and related products under the marks LA MICHOACANA, LA MICHOACANA NATURAL, and LA FLOR DE MICHOACAN since March 2001.[48]  Mr. Fernandez identified an October 28, 2003 invoice from petitioner featuring the mark LA MICHOACANA NATURAL and design for products used to make ice cream.[49]

> Q.  Have you also obtained a number of other products like we've seen before earlier today from [petitioner] for the purpose of advertising and promoting the brand La Flor de Michoacan?
>
> A.  From [petitioner] was flavors, all the materials that I need for making the ice cream bars, ice cream, juices, equipment.[50]

Mr. Fernandez also identified photographs displaying the marks LA FLOR DE MICHOACAN, LA MICHOACANA, and LA MICHOACANA NATURAL on store signs and freezers in the stores from the 2001 to 2002 time frame.[51]

---

[47] Jorge Malfavón Dep. pp. 24-25, Exhibit 24.
[48] Rigoberto Fernandez Dep., pp. 10, 17-23, 33, 35.
[49] Rigoberto Fernandez Dep., pp. 10-11, Exhibit 14.  Marco Malfavón also identified this exhibit (Marco Malfavón Dep., pp. 40-41, question No. 112, Exhibit 14).
[50] Rigoberto Fernandez Dep., p. 21.
[51] Rigoberto Fernandez Dep., pp. 28-36, Exhibit 32.

In view of the foregoing, we find that petitioner, through its licensee, Fernandez, used the marks LA MICHOACANA NATURAL and design, LA FLOR DE MICHOACAN, and LA MICHOACANA in connection with ice cream and retail ice cream store services since 2001.

Respondent argues that the testimony of petitioner's witnesses is unsubstantiated and whatever documentary evidence petitioner introduced to establish its priority is inconsistent.[52]  While it is certainly preferable for a party's testimony to be supported by corroborating documents, the lack of documentary evidence is not fatal. "Oral testimony, if sufficiently probative, is normally satisfactory to establish priority of use."  *Powermatics, Inc. v. Globe Roofing Products Co.,* 341 F.2d 127, 144 USPQ 430, 432 (CCPA 1965).  In this regard, oral testimony should be clear, consistent, convincing, and uncontradicted.  *See National Bank Book Co. v. Leather Crafted Products, Inc.,* 218 USPQ 826, 828 (TTAB 1993) (oral testimony may be sufficient to prove the first use of a party's mark when it is based on personal knowledge, it is clear and convincing, and it has not been contradicted); *Liqwacon Corp. v. Browning-Ferris Industries, Inc.,* 203 USPQ 305, 316 (TTAB 1979) (oral testimony may be sufficient to establish both prior use and continuous use when the testimony is proffered

---

[52] Respondent's Brief, pp. 19-28.

by a witness with knowledge of the facts and the testimony is clear, convincing, consistent, and sufficiently circumstantial to convince the Board of its probative value); *GAF Corp. v. Anatox Analytical Services, Inc.,* 192 USPQ 576, 577 (TTAB 1976) (oral testimony may establish prior use when the testimony is clear, consistent, convincing, and uncontradicted).  The testimony of petitioner's witnesses is clear, convincing, consistent and uncontradicted.

Respondent also argues that petitioner has not proven ownership of its marks.[53]  However, we are satisfied by the testimony of Marco Malfavón and Jorge Malfavón, as described above, that petitioner is the owner of the marks LA MICHOACANA NATURAL and design, LA FLOR DE MICHOACAN, LA MICHOACANA and the Indian girl design in Mexico, has licensed the use of those marks in the United States, and that the use of the marks in the United States inures to the benefit of petitioner.  That the Mexican trademark registrations are in the name of Marco Malfavón rather than petitioner does not negate our finding that petitioner is the owner of the marks.  We recognize that ownership of foreign registrations is not necessarily probative of ownership of the mark in the United States.  However, the testimony of the witnesses demonstrates that petitioner is a

family-owned and run business and that there is a unity of control. In a similar situation the Board found that a family-owned and run business provided the requisite unity of control.

> It is clear from the record that Mr. Guagenti has been the leading light or owner of what can be considered to be family enterprises or, if you will, corporate sales, and that, for purpose of convenience, he, at the advice of counsel or accountant, transferred ownership of his various interests to one or another of his corporations without disturbing, and that is the important fact, the continuance of operation of his different activities including that of the "FARMER'S DAUGHTER" restaurant. It is apparent that there was not nor is there any claim of adverse rights in the mark "FARMER'S DAUGHTER" by any corporation within Mr. Guagenti's organization and that, in essence, any use of the mark by any of the corporations was for the benefit of and inured to the benefit of Mr. Guagenti.

*Airport Canteen Services, Inc. v. Farmer's Daughter, Inc.,* 184 USPQ 622, 627 (TTAB 1974). *See also, Automedx Inc. v. Artivent Corp.,* 95 USPQ2d 1976, 1984 (TTAB 2010) ("Dr. Wiesman has been the central figure of what can be characterized as a number of research and development projects that are ultimately marketed by separate entities. … the mark points to a single source: that is, the use of the SAVe mark was for the benefit of and inured to the benefit of Dr. Wiesman through his conglomerate").

---

[53] Respondent's Brief, pp. 30-35.

In view of the foregoing, we find that petitioner has priority of use with respect to petitioner's Indian girl and the marks LA MICHOACANA NATURAL and design, LA FLOR DE MICHOACAN, and LA MICHOACANA.

## Likelihood of Confusion

Our determination under Section 2(d) is based on an analysis of all of the probative facts in evidence that are relevant to the factors bearing on the issue of likelihood of confusion. *In re E. I. du Pont de Nemours & Co.,* 476 F.2d 1357, 177 USPQ 563, 567 (CCPA 1973). *See also, In re Majestic Distilling Company, Inc.,* 315 F.3d 1311, 65 USPQ2d 1201, 1203 (Fed. Cir. 2003). In any likelihood of confusion analysis, two key considerations are the similarities between the marks and the similarities between the goods and/or services. *See Federated Foods, Inc. v. Fort Howard Paper Co.,* 544 F.2d 1098, 192 USPQ 24, 29 (CCPA 1976) ("The fundamental inquiry mandated by §2(d) goes to the cumulative effect of differences in the essential characteristics of the goods and differences in the marks").

A.  The similarity or dissimilarity and nature of petitioner's goods and the goods described in the registration.

Respondent's registration identifies "ice cream and fruit products, namely fruit bars." Petitioner through its licensees, El Michoacana Natural, Inc. and Rigoberto Fernandez, uses petitioner's Indian girl in connection with

the sale of ice cream and ice cream bars,[54] the mark LA MICHOACANA NATURAL and design for ice cream, ice cream bars and flavored waters,[55] the mark LA FLOR DE MICHOACAN and design for ice cream bars,[56] and the mark LA MICHOACANA for ice cream products.[57] Accordingly, all the marks at issue are used in connection with ice cream.

B.   The similarity of likely-to-continue channels of trade and classes of consumers.

With respect to respondent's products, because there are no restrictions as to channels of trade or classes of consumers in respondent's description of goods, we must assume that respondent's "ice cream and fruit products, namely, fruit bars," will be sold in all of the normal channels of trade to all of the normal purchasers for such goods, including retail ice cream stores. *Canadian Imperial Bank of Commerce v. Wells Fargo Bank,* 811 F.2d 1490, 1 USPQ2d 1813, 1815 (Fed. Cir. 1987); *Toys R Us v. Lamps R Us,* 219 USPQ 340, 343 (TTAB 1983).  Petitioner's LA FLOR DE MICHOACANA registered marks are also unrestricted and, therefore, move in all of the normal channels of trade to all the normal purchasers for ice cream.

---

[54] Jorge Malfavón Dep., pp. 16-17 and 32, Exhibits 29 and 30; Rigoberto Fernandez Dep., p. 10.
[55] Jorge Malfavón Dep., pp. 16-19.
[56] Jorge Malfavón Dep., p. 25.  *See also* petitioner's Registration Nos. 2830401 and 3249113.
[57] Rigoberto Fernandez Dep., pp. 10, 17, 18-23, 33, 35.

Rigoberto Fernandez testified that his use of the mark LA MICHOACANA NATURAL was not limited to his retail ice cream stores; rather, he sold ice cream in bulk for resale to a variety of retailers including grocery stores, convenience stores and gas stations.[58] As indicated above, because there are no restrictions in respondent's registration, the channels of trade and classes of consumers are presumptively the same with respect to petitioner's LA MICHOACANA NATURAL trademarks. In fact, respondent also sells its products for resale to a variety of retailers.[59]

Petitioner offered no testimony regarding the channels of trade or classes of consumers with respect to the ice cream sold in connection with LA MICHOACANA or petitioner's Indian girl design. Because LA MICHOACANA and petitioner's Indian girl design are not registered, there are no presumptions regarding the channels of trade or classes of consumers. In this regard, petitioner cannot deliberately cause confusion by selling respondent's products in its stores. Moreover, if petitioner did sell respondent's products in its stores, such sales would raise the defense of acquiescence. On the other hand, the goods at issue are ice cream and ice cream is a consumer product sold to average consumers throughout society.

---

[58] Fernandez Dep., pp. 17-18.
[59] Patricia Gutierrez Dep., p. 17.

C. The conditions under which and buyers to whom sales are made, i.e. "impulse" vs. careful, sophisticated purchasing.

Because there is no limitation or restriction as to price, we must presume that respondent's ice cream and fruit bars would be sold at all the usual prices for such goods. As displayed in the menu petitioner made of record, ice cream bars are sold for $1.75 and fruit bars are sold for $1.25. We find that ice cream bars and fruit bars are inexpensive products and by their very nature, are impulse purchase items. Accordingly we find that consumers will not exercise a high degree of care when purchasing these products.

D. The similarity or dissimilarity of the marks in their entireties as to appearance, sound, connotation and commercial impression.

We now turn to the *du Pont* likelihood of confusion factor focusing on the similarity or dissimilarity of the marks in their entireties as to appearance, sound, connotation and commercial impression. *In re E. I. du Pont De Nemours & Co.,* 177 USPQ at 567. In a particular case, any one of these means of comparison may be critical in finding the marks to be similar. *In re White Swan Ltd.,* 8 USPQ2d 1534, 1535 (TTAB 1988); *In re Lamson Oil Co.,* 6 USPQ2d 1041, 1042 (TTAB 1988). In comparing the marks, we are mindful that where, as here, the goods are identical, the degree of similarity necessary to find likelihood of

confusion need not be as great as where there is a recognizable disparity between the goods. *Century 21 Real Estate Corp. v. Century Life of America,* 970 F.2d 874, 23 USPQ2d 1698, 1700 (Fed. Cir. 1992); *Jansen Enterprises Inc. v. Rind,* 85 USPQ2d 1104, 1108 (TTAB 2007); *Schering-Plough HealthCare Products Inc. v. Ing-Jing Huang,* 84 USPQ2d 1323, 1325 (TTAB 2007).

Also, it is well established that in comparing the marks, the test is not whether the marks can be distinguished when subjected to a side-by-side comparison, but rather whether the marks are sufficiently similar in terms of their overall commercial impression so that confusion as to the source of the goods offered under the respective marks is likely to result. *San Fernando Electric Mfg. Co. v. JFD Electronics Components Corp.,* 565 F.2d 683, 196 USPQ 1, 3 (CCPA 1977); *Spoons Restaurants Inc. v. Morrison Inc.,* 23 USPQ2d 1735, 1741 (TTAB 1991), *aff'd unpublished,* No. 92-1086 (Fed. Cir. June 5, 1992). The proper focus is on the recollection of the average customer, who retains a general rather than a specific impression of the marks. *Winnebago Industries, Inc. v. Oliver & Winston, Inc.,* 207 USPQ 335, 344 (TTAB 1980); *Sealed Air Corp. v. Scott Paper Co.,* 190 USPQ 106, 108 (TTAB 1975). In this case, the average customer is an average person who eats ice cream.

1.   Indian girl design

Petitioner's Indian girl is shown below.



Respondent's mark is shown below.



The Indian girl designs are virtually identical.  In view of the identity of the products and the impulse nature of ice cream purchases, the word portion of respondent's mark is not sufficient to distinguish the marks.  We recognize that the word portions of composite word and design marks are normally accorded greater weight in the likelihood of confusion analysis because consumers use the words to call for the products.  However, in this case, because the designs are remarkably similar and the word portion of respondent's marks reinforces the design, the differences in the marks do not distinguish them.[60] Accordingly, we find that respondent's mark is similar to petitioner's Indian girl design mark.

2.    Marks that include the word "Michoacana."

To analyze the word marks, we must first determine the meaning of the word "Michoacana."  Michoacán is a state in west-central Mexico.[61]  The term "La Michoacana" means "the woman from Michoacán."[62]  The word portion of respondent's mark LA INDITA MICHOACANA means the Indian girl or woman from Michoacán.

Neither party has introduced any evidence regarding the meaning or renown of the term "Michoacana" in the United States when used in connection with ice cream.  Both Ignacio and Patricia Gutierrez testified that LA MICHOACANA is commonly used as the name for ice cream stores in Mexico, but neither provided any further testimony as how that might relate to its use in the United States.[63]  Although Ms. Gutierrez said that the "paleta" (a fruit bar) "was supposed to be a tradition or something that was created in Michoacan,"[64] she did not explain whether that was known in the United States.

---

[60] Marco Malfavón Dep., p. 30, question No. 86 ("Diseño Indita" (Design of an Indian Girl)").
[61] Encyclopedia Britannica (2011).  The Board may take judicial notice of information in encyclopdias.  *B.V.D. Licensing Corp. v. Body Action Design Inc*., 846 F.2d 727, 6 USPQ2d 1719 (Fed. Cir. 1988) (encyclopedias may be consulted); *Sprague Electric Co. v. Electrical Utilities Co*., 209 USPQ 88 (TTAB 1980) (standard reference works).  *See also* respondent's responses to interrogatory Nos. 7, 9 and 26.
[62] Registration Nos. 1552163 and 2145216 attached to respondent's notice of reliance.
[63] Ignacio Guttierrez Dep., pp. 10-11 and 48; Patricia Guttierrez Dep., pp. 13 and 68-69.
[64] Patricia Gutierrez Dep., p. 69.

Respondent also introduced by notice of reliance three third-party registrations with the word "Michoacana" or "Michoacan":

1.    Registration No. 1552163 for the mark LA MICHOACANA for tortillas;

2.    Registration No. 3623346 for the mark EL SABOR DE MICHOACAN for ice cream and sherbet; and

3.    Registration No. 2145216 for the mark LA MICHOACANA PARADISIO SORBET and design for, *inter alia,* frozen fruit bars and ice cream.

While these registrations are probative of the meaning of the word "Michoacana," they do not prove that "Michoacana" is a commercially weak term.  Absent evidence of actual use, third-party registrations have little probative value because they are not evidence that the marks are in use on a commercial scale or that the public has become familiar with them.  *See Smith Bros. Mfg. Co. v. Stone Mfg. Co.,* 476 F.2d 1004, 177 USPQ 462, 463 (CCPA 1973) (the purchasing public is not aware of registrations reposing in the U.S. Patent and Trademark Office).  *See also In re Hub Distributing, Inc.,* 218 USPQ 284, 285 (TTAB 1983).

Based on this record, we find that the term "Michoacana" when used in connection with ice cream and/or fruit bars has some significance suggesting a connection with "Michoacan" but it is not clear to what extent people

in the United States would understand or recognize that connection and there is no evidence demonstrating that the term "Michoacana" has been so commonly used in the United States that it is only entitled to a narrow scope of protection or exclusivity of use.

Although there are obvious differences between petitioner's mark LA MICHOACANA and respondent's mark LA INDITA MICHOACANA and design, the marks are similar in appearance and sound to the extent that they both include the word "Michoacana."  In addition, they have similar meanings in that LA MICHOACANA means the woman from Michoacán and LA INDITA MICHOACANA means the Indian woman from Michoacán.  As noted above, the term LA INDITA MICHOACANA reinforces the design portion of the mark, and, thus, both the petitioner's mark and respondent's mark engender the same commercial impression (*i.e.,* ice cream from a Michoacán woman).  In view of the foregoing, we find that respondent's mark LA INDITA MICHOACANA and design is similar to petitioner's mark LA MICHOACANA.

For the same reasons, we find that respondent's mark is similar to petitioner's marks LA MICHOACANA NATURAL and LA MICHOACANA NATURAL and design.

However, we find that respondent's mark is not similar to petitioner's mark LA FLOR DE MICHOACAN and design because the differences in the meanings and commercial impressions

engendered by the marks outweigh any similarities caused by the inclusion of the word "Michoacana."

E.    No reported instances of actual confusion.

Respondent argues that there is no likelihood of confusion as evidenced by the lack of any reported instances of actual confusion.  However, the absence of any reported instances of confusion is meaningful only if the record indicates appreciable and continuous use by respondent of its mark for a significant period of time in the same markets as those served by petitioner under its marks. *Gillette Canada Inc. v. Ranir Corp.,* 23 USPQ2d 1768, 1774 (TTAB 1992).  In other words, for the absence of actual confusion to be probative, there must have been a reasonable opportunity for confusion to have occurred.  *Barbara's Bakery Inc. v. Landesman,* 82 USPQ2d 1283, 1287 (TTAB 2007) (the probative value of the absence of actual confusion depends upon there being a significant opportunity for actual confusion to have occurred); *Red Carpet Corp. v. Johnstown American Enterprises Inc.,* 7 USPQ2d 1404, 1406-1407 (TTAB 1988); *Central Soya Co., Inc. v. North American Plant Breeders,* 212 USPQ 37, 48 (TTAB 1981) ("the absence of actual confusion over a reasonable period of time might well suggest that the likelihood of confusion is only a remote possibility with little probability of occurring").  In this case, the record shows that respondent and petitioner do

business in discrete geographic regions on separate sides of the country.[65]  Accordingly, the lack of any reported instances of actual confusion is a neutral factor in our analysis.

F.    Balancing the factors.

The goods at issue are identical.  With respect to petitioner's registered marks LA MICHOACANA NATURAL and LA MICHOACANA NATURAL and design, the channels of trade and classes of consumers are presumed to be the same.  The evidence shows that the channels of trade and classes of consumers are the same with respect to petitioner's mark LA MICHOCANA NATURAL and that the classes of consumers are the same with respect to petitioner's mark LA MICHOACANA and its Indian girl design.  In addition, because ice cream is a low cost impulse purchase, consumers do not exercise a high degree of care.  Under these circumstances, respondent's mark LA INDITA MICHOACANA and design is sufficiently similar to petitioner's Indian girl and its marks LA MICHOACANA, LA MICHOACANA NATURAL and LA MICHOACANA NATURAL and design to cause confusion, but not to petitioner's mark LA FLOR DE MICHOACAN and design.  In view thereof, we find respondent's mark LA INDITA MICHOACANA and design is likely to cause confusion with petitioner's Indian girl and its marks LA

---

[65] Respondent designated this information as confidential. Patricia Gutierrez Dep., pp. 17-19, 34 and 38.

Cancellation No. 92047438

MICHOACANA, LA MICHOACANA NATURAL and LA MICHOACANA NATURAL and design.

    **Decision**:  The petition for cancellation is granted and Registration No. 3210304 will be cancelled in due course.

42